# Composite Exhibit F

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
### CASE NO. 0:11-CV-60999-MARTINEZ

LOUIS VUITTON MALLETIER, S.A.,
       Plaintiff,

    v.

HOU CHUNQIU, QIN HUA, RONG
MI, XUE KUI, and DOES 1-10,
       Defendants.

_____/

## ORDER GRANTING *EX PARTE* APPLICATION FOR ENTRY OF TEMPORARY RESTRAINING ORDER AND ORDER RESTRAINING TRANSFER OF ASSETS TIED TO THE COUNTERFEITING OPERATION

THIS CAUSE came before the Court upon Plaintiff's *Ex Parte* Application for Entry of Temporary Restraining Order and Preliminary Injunction and Order Restraining Transfer of Assets Tied to the Counterfeiting Operation (the "Application for TRO and Asset Restraint") (D.E. No. 6). Plaintiff, Louis Vuitton Malletier, S.A. ("Plaintiff" or "Louis Vuitton") has filed this action alleging violations of the Lanham Act, 15 U.S.C. §§ 1114 and 1125(a). Plaintiff moves *ex parte*, for entry of a temporary restraining order, and upon expiration of the temporary restraining order, a preliminary injunction against Defendants Hou Chunqiu, Qin Hua, Rong Mi, Xue Kui, and Does 1-10 (collectively "Defendants") doing business as the domain names identified on Schedule "A" annexed hereto (the "Subject Domain Names"). After careful consideration and for the reasons set forth below, the Court grants Plaintiff's Application for TRO and Asset Restraint and sets a hearing on Plaintiff's motion for a preliminary injunction.

The standard for issuing a temporary restraining order is the same as that applied when issuing a preliminary injunction. *Morgan Stanley BW, Inc. v. Frisby*, 163 F. Supp. 2d 1371, 1374 (N.D. Ga. 2001). When considering whether to enter a temporary restraining order or a preliminary injunction the moving party must demonstrate "(1) a substantial likelihood of

success on the merits; (2) that irreparable injury will be suffered unless the injunction [or restraining order] issues; (3) the threatened injury to the movant outweighs whatever damage the proposed injunction [or restraining order] may cause the opposing party; and (4) if issued, the injunction [or restraining order] would not be adverse to the public interest. *Four Seasons Hotels & Resorts v. Consorcio Barr*, 320 F.3d 1205, 1210 (11th Cir. 2003). The declarations Plaintiff submitted in support of its Application for TRO and Asset Restraint support all of these findings.

First, Plaintiff has a substantial likelihood of success on the merits. Plaintiff has a very strong probability of proving at trial that consumers are likely to be confused by Defendants' advertisement, promotion, sale, offer for sale, and/or distribution of at least handbags, wallets, shoes, belts, jewelry, watches, and sunglasses, bearing counterfeits, reproductions, and/or colorable imitations of the Louis Vuitton trademarks identified in paragraph 10 of the Complaint in this matter (D.E. No. 1 at 4-5) (the "Louis Vuitton Marks"), and that the products Defendants are selling are copies of Plaintiff's products that bear copies of the Louis Vuitton Marks on handbags, wallets, shoes, belts, jewelry, watches, and sunglasses.

Plaintiff has also demonstrated that it is likely to suffer immediate and irreparable injury if a temporary restraining order is not granted. Specifically, it is clear from Plaintiff's Complaint and the declarations filed on the record that Defendants are operating internet businesses which advertise, offer for sale, and sell at least handbags, wallets, shoes, belts, jewelry, watches, and sunglasses, bearing counterfeit and infringing trademarks in violation of Plaintiff's rights. There is also good cause to believe that more counterfeit and infringing handbags, wallets, shoes, belts, jewelry, watches, and sunglasses bearing Plaintiff's trademarks will appear in the marketplace, that consumers may be misled, confused, and disappointed by the quality of these products, and that Plaintiff may suffer loss of sales for its genuine products. Finally, there is also good cause to believe that if Plaintiff proceeds on notice to Defendants, Defendants can easily and quickly

2

transfer the registrations for many of the Subject Domain Names, or modify registration data and content, change hosts, redirect traffic to other websites, and secret assets, thereby thwarting Plaintiff's ability to obtain meaningful relief.

In addition, the balance of potential harm to Defendants in restraining their trade in counterfeit and infringing branded goods if a temporary restraining order is issued is far outweighed by the potential harm to Plaintiff, its reputation and goodwill as a manufacturer of quality handbags, wallets, shoes, belts, jewelry, watches, and sunglasses, if such relief is not issued.

Finally, the public interest favors issuance of the temporary restraining order in order to protect Plaintiff's trademark interests and protect the public from being defrauded by the palming off of counterfeit goods as genuine goods of the Plaintiff. Thus, the Court grants Plaintiff's motion for a temporary restraining order.

Therefore, it is hereby:

**ORDERED AND ADJUDGED** that:

1.  Plaintiff's *Ex Parte* Application for Entry of Temporary Restraining Order and Preliminary Injunction and Order Restraining Transfer of Assets Tied to the Counterfeiting Operation is **GRANTED**.

2.  Pursuant to Federal Rule of Civil Procedure 65(c), Plaintiff shall immediately post a bond in the amount of Ten Thousand Dollars and Zero Cents ($10,000.00). Plaintiff shall post the bond prior to requesting the Registry to transfer control of the Subject Domain Names, as discussed below.

3.  A Temporary Restraining Order is hereby entered against Defendants as follows:

a.    Defendants, their officers, directors, employees, agents, subsidiaries, distributors, and all persons in active concert or participation with Defendants having notice of this Order are hereby temporarily restrained:

    i.    From manufacturing, importing, advertising, promoting, offering to sell, selling, distributing, or transferring any products bearing the Louis Vuitton Marks, or any confusingly similar trademarks, other than those actually manufactured or distributed by Plaintiff; and

    ii.    From secreting, concealing, destroying, selling off, transferring, or otherwise disposing of: (i) any products, not manufactured or distributed by Plaintiff, bearing the Louis Vuitton Marks, or any confusingly similar trademarks; or (ii) any evidence relating to the manufacture, importation, sale, offer for sale, distribution, or transfer of any products bearing the Louis Vuitton Marks, or any confusingly similar trademarks.

b.    Defendants, their officers, directors, employees, agents, subsidiaries, distributors, and all persons in active concert or participation with Defendants having notice of this Order shall immediately discontinue the use of the Louis Vuitton Marks or any confusingly similar trademarks, on or in connection with all Internet websites owned and operated, or controlled by them including the Internet websites operating under the Subject Domain Names;

c.    Defendants, their officers, directors, employees, agents, subsidiaries, distributors, and all persons in active concert or participation with

4

Defendants having notice of this Order shall immediately discontinue the use of the Louis Vuitton Marks, or any confusingly similar trademarks within domain name extensions, metatags or other markers within website source code, from use on any webpage (including as the title of any web page), any advertising links to other websites, from search engines' databases or cache memory, and any other form of use of such terms which is visible to a computer user or serves to direct computer searches to websites registered by, owned, or operated by Defendants, including the Internet websites operating under the Subject Domain Names;

d.   Defendants shall not transfer ownership of the Subject Domain Names during the pendency of this Action, or until further Order of the Court;

e.   The domain name Registrars for the Subject Domain Names are directed to transfer to Plaintiff's counsel, for deposit with this Court, domain name certificates for the Subject Domain Names;

f.   The top-level domain (TLD) Registries for the Subject Domain Names, within ten (10) days of receipt of this Temporary Restraining Order shall change the registrar of record for the Subject Domain Names to a holding account with the United States based Registrar, GoDaddy.com, Inc. Upon transfer of the Subject Domain Names into the holding account, GoDaddy.com, Inc. will hold the Subject Domain Names in trust for the Court during the pendency of this action. Additionally, GoDaddy.com, Inc. shall immediately update the Domain Name System ("DNS") data it maintains for the Subject Domain Names, which links the domain names to the IP addresses where their associated websites are hosted, to

5

NS1.MEDIATEMPLE.NET and NS2.MEDIATEMPLE.NET, which will cause the domain names to resolve to the website where a copy of the Complaint, Summonses, and Temporary Restraining Order and other documents on file in this action are displayed. Alternatively, GoDaddy.com, Inc. may institute a domain name forwarding which will automatically redirect any visitor to the Subject Domain Names to the following Uniform Resource Locator ("URL") http://www.servingnotice.com/chunqiu/index.html whereon a copy of the Complaint, Summonses, and Temporary Restraining Order and other documents on file in this action are displayed. After GoDaddy.com, Inc. has effected this change the Subject Domain Names shall be placed on Lock status, preventing the modification or deletion of the domains by the registrar or Defendants;

g.   Plaintiff may enter the Subject Domain Names into Google's Webmaster Tools and cancel any redirection of the domains that have been entered there by Defendants which redirect traffic to the counterfeit operations to a new domain name and thereby evade the provisions of this Order;

h.   Upon receipt of notice of this Order, PayPal, Inc. ("PayPal") and its related companies and affiliates shall immediately freeze all PayPal accounts related to the PayPal account recipient "saleverday@hotmail.com" which is associated with the transaction number, 0J1028239C940210H, issued April 18, 2011 and any other related accounts of the same customer;

6

i.    PayPal shall also immediately divert to a holding account for the trust of the Court all funds currently in, or which during the pendency of this Order come in to, all PayPal accounts related to the PayPal account recipient "saleverday@hotmail.com" or which are associated with the transaction number, 0J1028239C940210H issued April 18, 2011 and any other related accounts of the same customer;

j.    PayPal shall further, within five (5) days of receiving this Order, provide Plaintiff's counsel with all data which identifies the PayPal accounts frozen as well as an accounting of the funds in the frozen accounts. Such freezing of the accounts and the disclosure of the related financial institution account information shall be made without notice to the account owners or the financial institutions until further order of this Court. PayPal shall receive and maintain this Order and its contents as confidential until further order of this Court;

k.    Defendants shall preserve copies of all their computer files relating to the use of any of the Subject Domain Names and shall take all steps necessary to retrieve computer files relating to the use of the Subject Domain Names that may have been deleted before the entry of this Order;

4.    This Temporary Restraining Order shall remain in full force and effect until fourteen (14) days from the date of this Order. The Temporary Restraining Order may be extended upon the filing of a motion by the Plaintiff in which the Plaintiff demonstrates that there is good cause for such an extension or that the parties have agreed to the extension.

5.    The parties shall take notice that a hearing shall take place on Plaintiff's motion for a preliminary injunction before the undersigned, United States District Judge Jose E.

7

Martinez, at the United States Courthouse located at 400 North Miami Avenue, Miami, Florida 33128, on May 31, 2011, at 10:00 a.m. This hearing shall not exceed thirty (30) minutes. The parties shall confer prior to the hearing to determine how to split the allotted time. If the parties are unable to agree on how to split the allotted time, the Court will decide how to split the allotted time. Defendants may file a motion requesting an earlier hearing on the terms of this temporary restraining order in accordance with the terms of Federal Rule of Civil Procedure 65.

      6.    Plaintiff shall serve a copy of the Application for TRO and Asset Restraint and this Order on Defendants via their known e-mail addresses, specifically, support@grereat.com, netregards@hotmail.com, lao.ke@163.com, upptrade@live.cn, EastSellers@hotmail.com, web@eastsellers.com, exportclothes@live.com, exportclothes@hotmail.com, support@grereat.com, web@happyclick321.com, happyclick321@hotmail.com, happyshopping51@hotmail.com, export@macropaypal, zhezixi2599@hotmail.com, Service@PaypalAid.com, Pay-palAid@hotmail.com, services@trade-everyday.com, web@uebaycn.com, web@uiushopping.com, uiushopping@hotmail.com, web@upptrade.com, upptrade@hotmail.com, support@viapaypal.com, via-support@hotmail.com, web@wholesalehotsell.com, and sellone2009@hotmail.com. In addition, Plaintiff shall post a copy of the Application for TRO and Asset Restraint and this Order on the website located at http://www.servingnotice.com/chunqiu/index.html, upon transfer of the Subject Domain Names into the holding account with GoDaddy.com, Inc.

      DONE AND ORDERED in chambers in Miami, Florida, this 16 day of May, 2011 at 11:00 . AM

JOSE E. MARTINEZ
UNITED STATES DISTRICT JUDGE

Copies provided to:
All Counsel of Record

# SCHEDULE "A"
## SUBJECT DOMAIN NAMES

1. aaabeste.org
2. abcgreat.com
3. buy-fashionshop.com
4. buyonhere.com
5. cheap-bestshop.com
6. cheap-onlineshop.com
7. china-drop-ship.com
8. cndess.org
9. cnioffer.com
10. eastsellers.com
11. easy-ship.org
12. exportclothes.com
13. girl2u.info
14. grereat.com
15. happyclick321.com
16. happyshopping51.com
17. macropaypal.com
18. maktrade.org
19. paypalaid.com
20. paypalgoods.com
21. placerde.info
22. punmc.com
23. safely-shop.com
24. salevrday.com
25. shop-safelyway.com
26. super-cheapshop.com
27. super-lowprice.com
28. top-ratedseller.net
29. trade-everyday.com
30. uebaycn.com
31. uggmonclerstore.com
32. uiushopping.com
33. upptrade.com
34. upptrade.net
35. viamader.com
36. viapaypal.com
37. welenter.com
38. wholesalehotsell.com

Sealed

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
### Miami Division

CASE NO.: 11-60913-CIV-MARTINEZ

ABERCROMBIE & FITCH TRADING CO.,

      Plaintiff,

v.

WU ZHIYONG, *et al.*,

      Defendants.

_____/

## SEALED ORDER GRANTING *EX PARTE* APPLICATION FOR ENTRY OF TEMPORARY RESTRAINING ORDER AND ORDER RESTRAINING TRANSFER OF ASSETS TIED TO THE COUNTERFEITING OPERATION

THIS CAUSE came before the Court upon Plaintiff's *Ex Parte* Application for Entry of Temporary Restraining Order and Preliminary Injunction and Order Restraining Transfer of Assets Tied to the Counterfeiting Operation (the "Application for TRO and Asset Restraint") (D.E. No. 8). Plaintiff Abercrombie & Fitch Trading Co. ("Abercrombie" or "Plaintiff") has filed this action alleging violations of the Lanham Act, 15 U.S.C. §§ 1114, and 1125(a) and (d). Plaintiff moves *ex parte*, for entry of a temporary restraining order, and upon expiration of the temporary restraining order, a preliminary injunction against Defendants Wu Zhiyong, Zhan Qiang Fan, Yonghong Shen, Xian Qin, and Does 1-10 (collectively "Defendants") doing business as the domain names ("Subject Domain Names") identified in Schedule A, attached hereto. After careful consideration and for the reasons set forth below, the Court grants Plaintiff's Application for TRO and Asset Restraint and sets a hearing on Plaintiff's motion for a preliminary injunction.

The standard for issuing a temporary restraining order is the same as that applied when issuing a preliminary injunction. *Morgan Stanley BW, Inc. v. Frisby*, 163 F. Supp. 2d 1371, 1374 (N.D. Ga. 2001). When considering whether to enter a temporary restraining order or a preliminary injunction the moving party must demonstrate "(1) a substantial likelihood of success on the merits; (2) that irreparable injury will be suffered unless the injunction [or restraining order] issues; (3) the threatened injury to the movant outweighs whatever damage the proposed injunction [or restraining order] may cause the opposing party; and (4) if issued, the injunction [or restraining order] would not be adverse to the public interest. *Four Seasons Hotels & Resorts v. Consorcio Barr*, 320 F.3d 1205, 1210 (11th Cir. 2003). The declarations Plaintiff submitted in support of its Application for TRO and Asset Restraint support all of these findings.

First, Plaintiff has a substantial likelihood of success on the merits. Plaintiff has a very strong probability of proving at trial that consumers are likely to be confused by Defendants' advertisement, promotion, sale, offer for sale, and/or distribution of t-shirts, polo shirts, sweat shirts, sweaters, sweat pants, shorts, swimwear, jeans, footwear, scarves, underwear, slippers, coats, jewelry, belts, skirts, caps, and tote bags, bearing counterfeits, reproductions, and/or colorable imitations of the Abercrombie trademarks identified in paragraph 10 of the Complaint in this matter (D.E. No. 1 at 4-5) (the "Abercrombie Marks"), and that the products Defendants are selling are copies of Plaintiff's products that bear copies of the Abercrombie Marks on t-shirts, polo shirts, sweat shirts, sweaters, sweat pants, shorts, swimwear, jeans, footwear, scarves, underwear, slippers, coats, jewelry, belts, skirts, caps, and tote bags.

Plaintiff has also demonstrated that it is likely to suffer immediate and irreparable injury if a temporary restraining order is not granted. Specifically, it is clear from Plaintiff's Complaint and the declarations filed on the record that Defendants are operating internet businesses which

advertise, offer for sale, and sell at least t-shirts, polo shirts, sweat shirts, sweaters, sweat pants, shorts, swimwear, jeans, footwear, scarves, underwear, slippers, coats, jewelry, belts, skirts, caps, and tote bags, bearing counterfeit and infringing trademarks in violation of Plaintiff's rights. There is also good cause to believe that more counterfeit and infringing t-shirts, polo shirts, sweat shirts, sweaters, sweat pants, shorts, swimwear, jeans, footwear, scarves, underwear, slippers, coats, jewelry, belts, skirts, caps, and tote bags bearing Plaintiff's trademarks will appear in the marketplace, that consumers may be misled, confused, and disappointed by the quality of these products, and that Plaintiff may suffer loss of sales for its genuine products. Finally, there is also good cause to believe that if Plaintiff proceeds on notice to Defendants, Defendants can easily and quickly transfer the registrations for many of the Subject Domain Names, or modify registration data and content, change hosts, redirect traffic to other websites, and secret assets, thereby thwarting Plaintiff's ability to obtain meaningful relief.

In addition, the balance of potential harm to Defendants in restraining their trade in counterfeit and infringing branded goods if a temporary restraining order is issued is far outweighed by the potential harm to Plaintiff, its reputation and goodwill as a manufacturer of quality t-shirts, polo shirts, sweat shirts, sweaters, sweat pants, shorts, swimwear, jeans, footwear, scarves, underwear, slippers, coats, jewelry, belts, skirts, caps, and tote bags, if such relief is not issued.

Finally, the public interest favors issuance of the temporary restraining order in order to protect Plaintiff's trademark interests and protect the public from being defrauded by the palming off of counterfeit goods as genuine goods of the Plaintiff. Thus, the Court grants Plaintiff's motion for a temporary restraining order.

Therefore, it is hereby:

**ORDERED AND ADJUDGED** that:

1.    Plaintiff's *Ex Parte* Application for Entry of Temporary Restraining Order and Preliminary Injunction and Order Restraining Transfer of Assets Tied to the Counterfeiting Operation (D.E. No. 8) is **GRANTED.**

2.    Pursuant to Federal Rule of Civil Procedure 65(c), Plaintiff shall immediately post a bond in the amount of Ten Thousand Dollars and Zero Cents ($10,000.00). Plaintiff shall post the bond prior to requesting the Registry to transfer control of the Subject Domain Names, as discussed below.

3.    A Temporary Restraining Order is hereby entered against Defendants as follows:

   a.    Defendants, their officers, directors, employees, agents, subsidiaries, distributors, and all persons in active concert or participation with Defendants having notice of this Order are hereby temporarily restrained:

   i.    From manufacturing, importing, advertising, promoting, offering to sell, selling, distributing, or transferring any products bearing the Abercrombie Marks, or any confusingly similar trademarks, other than those actually manufactured or distributed by Plaintiff; and

   ii.    From secreting, concealing, destroying, selling off, transferring, or otherwise disposing of: (i) any products, not manufactured or distributed by Plaintiff, bearing the Abercrombie Marks, or any confusingly similar trademarks; or (ii) any evidence relating to the manufacture, importation, sale, offer for sale, distribution, or

Case 0:11-cv-32305 FROM US DISTRICT COURT 5-4    Entered on FLSD Docket 08/31/2011 Page 15 of 92
Case 0:11-cv-60913-JEM   Document 15 *SEALED*    Entered on FLSD Docket 05/04/2011   Page
5 of 11

transfer of any products bearing the Abercrombie Marks, or any
confusingly similar trademarks.

b.  Defendants, their officers, directors, employees, agents, subsidiaries,
distributors, and all persons in active concert or participation with
Defendants having notice of this Order shall immediately discontinue the
use of the Abercrombie Marks or any confusingly similar trademarks, on
or in connection with all Internet websites owned and operated, or
controlled by them including the Internet websites operating under the
Subject Domain Names;

c.  Defendants, their officers, directors, employees, agents, subsidiaries,
distributors, and all persons in active concert or participation with
Defendants having notice of this Order shall immediately discontinue the
use of the Abercrombie Marks, or any confusingly similar trademarks
within domain name extensions, metatags or other markers within website
source code, from use on any webpage (including as the title of any web
page), any advertising links to other websites, from search engines'
databases or cache memory, and any other form of use of such terms
which is visible to a computer user or serves to direct computer searches
to websites registered by, owned, or operated by Defendants, including the
Internet websites operating under the Subject Domain Names;

d.  Defendants shall not transfer ownership of the Subject Domain Names
during the pendency of this Action, or until further Order of the Court;

e.    The domain name Registrars for the Subject Domain Names are directed
to transfer to Plaintiff's counsel, for deposit with this Court, domain name
certificates for the Subject Domain Names;

f.    The top-level domain (TLD) Registries for the Subject Domain Names,
within ten (10) days of receipt of this Temporary Restraining Order shall
change the registrar of record for the Subject Domain Names to a holding
account with the United States based Registrar, GoDaddy.com, Inc. Upon
transfer of the Subject Domain Names into the holding account,
GoDaddy.com, Inc. will hold the Subject Domain Names in trust for the
Court during the pendency of this action. Additionally, GoDaddy.com,
Inc. shall immediately update the Domain Name System ("DNS") data it
maintains for the Subject Domain Names, which links the domain names
to the IP addresses where their associated websites are hosted, to
NS1.MEDIATEMPLE.NET and NS2.MEDIATEMPLE.NET, which will
cause the domain names to resolve to the website where a copy of the
Complaint, Summonses, and Temporary Restraining Order and other
documents on file in this action are displayed. Alternatively,
GoDaddy.com, Inc. may institute a domain name forwarding which will
automatically redirect any visitor to the Subject Domain Names to the
following Uniform Resource Locator ("URL")
http://servingnotice.com/zhivong/index.html whereon a copy of the
Complaint, Summonses, and Temporary Restraining Order and other
documents on file in this action are displayed. After GoDaddy.com, Inc.

has effected this change the Subject Domain Names shall be placed on Lock status, preventing the modification or deletion of the domains by the registrar or Defendants;

g.    Plaintiff may enter the Subject Domain Names into Google's Webmaster Tools and cancel any redirection of the domains that have been entered there by Defendants which redirect traffic to the counterfeit operations to a new domain name and thereby evade the provisions of this Order;

h.    Upon receipt of notice of this Order, PayPal, Inc. ("PayPal") and its related companies and affiliates shall immediately freeze all PayPal accounts related to the PayPal account recipient "ServiceTeamOnline@hotmail.com," which is associated with the transaction number, 13K56833G8813710R issued April 6, 2011 and any other related accounts of the same customer;

i.    PayPal shall also immediately divert to a holding account for the trust of the Court all funds currently in, or which during the pendency of this Order come in to, all PayPal accounts related to the PayPal account recipient "ServiceTeamOnline@hotmail.com" or which are associated with the transaction number, 13K56833G8813710R issued April 6, 2011 and any other related accounts of the same customer;

j.    PayPal shall further, within ten (10) days of receiving this Order, provide Plaintiff's counsel with all data which identifies the PayPal accounts frozen as well as an accounting of the funds in the frozen accounts. Such freezing of the accounts and the disclosure of the related financial

institution account information shall be made without notice to the account
owners or the financial institutions until further order of this Court.
PayPal shall receive and maintain this Order and its contents as
confidential until further order of this Court;

k.     Defendants shall preserve copies of all their computer files relating to the
use of any of the Subject Domain Names and shall take all steps necessary
to retrieve computer files relating to the use of the Subject Domain Names
that may have been deleted before the entry of this Order;

4.     This Temporary Restraining Order shall remain in full force and effect until
fourteen (14) days from the date of his order. The Court shall give due consideration to any
motions seeking an extension of the Temporary Restraining Order.

5.     The parties shall take notice that a hearing shall take place on Plaintiff's motion
for a preliminary injunction before the undersigned, United States District Judge Jose E.
Martinez, at the United States Courthouse located at 400 North Miami Avenue, Miami, Florida
33128, on May 13, 2011, at 2:00 p.m. This hearing shall not exceed thirty (30) minutes. The
parties shall confer prior to the hearing to determine how to split the allotted time. If the parties
are unable to agree on how to split the allotted time, the Court will decide how to split the
allotted time. Defendants may file a motion requesting an earlier hearing on the terms of this
temporary restraining order in accordance with the terms of Federal Rule of Civil Procedure 65.
It is Plaintiff's responsibility to ensure that Defendants have been served before this hearing.

6.     Plaintiff shall serve a copy of the Application for TRO and Asset Restraint and
this Order on Defendants via their known e-mail addresses, specifically,
service@ukabercrombiestore.com, serviceteam.unpaidorder@gmail.com, 905415795@qq.com,

877969996@qq.com, abercrombie4cheap1@hotmail.com, abercrombie8882010@hotmail.com, agnes-enva@hotmail.com, annysale@163.com, caowholesale@163.com, bella_why@yahoo.com, fanzy0928@gmail.com, gz8u8@163.com, lindaiyu8@gmail.com, modeabercrombie@hotmail.com, rachelbyrne1987@gmail.com, replicasfashions@gmail.com, signname01@gmail.com, sky_shyh@hotmail.com, soft.nl.ltd@gmail.com, vogueabercrombie@hotmail.com, xiaopi_138@126.com, vangguanghuadi@gmail.com, yorkabercrombie@hotmail.com, and yuwenpeng1984@163.com. In addition, Plaintiff shall post a copy of the Application for TRO and Asset Restraint and this Order on the website located at http:_servingnotice.com/zhivong/index.html, upon transfer of the Subject Domain Names into the holding account with GoDaddy.com, Inc.

    7.    Plaintiff shall file a motion to unseal this Order and any other sealed orders or motions/applications filed in this case after the Subject Domain Names are transferred to the Court's control as ordered herein and the PayPal accounts subject to this Order are frozen.

    DONE AND ORDERED in chambers in Miami, Florida, this 2 day of May, 2011 at 2:52 pm

JOSE E. MARTINEZ
UNITED STATES DISTRICT JUDGE

Copies provided to:
Magistrate Judge McAliley
All Counsel of Record

## SCHEDULE "A"

## SUBJECT DOMAIN NAMES

1.   abercrombie4cheap.com
2.   abercrombie888.com
3.   abercrombieandfitchsuk.com
4.   abercrombiefitch4you.com
5.   abercrombiefitchaf.com
6.   abercrombiefitchcouk.com
7.   abercrombiefitchofficial.org
8.   abercrombiefitchsale.uk.com
9.   abercrombiefitchsaleuk.com
10.  abercrombiefitchsaleuk.org.uk
11.  abercrombie-fitchstore.com
12.  abercrombiefitchukonline.com
13.  abercrombieofficial.org
14.  abercrombieofficialuk.org
15.  abercrombieonsale.org
16.  abercrombieonsaleuk.com
17.  abercrombies.org
18.  abercrombiesale.uk.com
19.  abercrombiesales.org
20.  abercrombies-uk.com
21.  abercrombiesuk.org
22.  abercrombies-us.com
23.  abercrombieukfitch.com
24.  abercrombieukfitchsale.com
25.  abercrombieyes.com
26.  abercrouk.com
27.  afclothes.info
28.  af-collections.com
29.  afcollections-uk.com
30.  afdiscounts.org
31.  afnow.com
32.  afshoppingonline.com
33.  annaz.org
34.  annazwholesale.com
35.  annywholesale.net
36.  annywholesale.org
37.  baronabercrombie.com
38.  bizclothing.biz
39.  bizclothingwholesale.com
40.  brandbagswholesale.net
41.  brandnewdesigns.net
42.  brandshoeswholesale.net
43.  cheapclothe.info

44. clothing-trade.biz
45. clothing-wholesale.biz
46. clothingwholesaleshop.com
47. complexabercrombie.com
48. exporters-trade.net
49. exporterstradesale.com
50. fitabercrombies.info
51. fitch-abercrombie.org
52. fitchecool.info
53. fitchestore.org
54. freeuniform.org
55. goabercrombie.com
56. gzbrandclothes.com
57. gzcheap.com
58. hollisterclothesoutlet.com
59. humdrumabercrombie.com
60. jokerabercrombie.com
61. kidsclothe.org
62. lureabercrombie.com
63. modeabercrombie.com
64. newtiffany101.com
65. popabercrombie.org
66. prettyafclothes.info
67. replica-jeans.net
68. replicassales.com
69. shirtclothes.net
70. shirtclotheswholesale.com
71. tiffanyonline101.com
72. ukabercrombiefitches.com
73. ukabercrombiefitchsale.com
74. uk-abercrombies.com
75. ukabercrombiestore.com
76. uk-afcollections.com
77. uktiffany1837.com
78. uk-tiffany1837.net
79. uktiffanysite.com
80. uktiffanystore.com
81. us-abercrombie.com
82. us-abercrombies.com
83. vogueabercrombie.com
84. wholesaleanna.com
85. wholesaleonsale.net
86. yorkabercrombie.com

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### CASE NO.11-60811-CIV-MIDDLEBROOKS/JOHNSON

LOUIS VUITTON MALLETIER, S.A.,

       Plaintiff,

  v.

YANLING FENG a/k/a
YILAI COMPANY, and DOES 1-10,

       Defendants.

_____/

### ORDER GRANTING *EX PARTE* APPLICATION FOR ENTRY OF TEMPORARY RESTRAINING ORDER AND ORDER RESTRAINING TRANSFER OF ASSETS TIED TO THE COUNTERFEITING OPERATION

THIS CAUSE comes before the Court on Plaintiff's *Ex Parte* Application for Entry of Temporary Restraining Order and Preliminary Injunction and Order Restraining Transfer of Assets Tied to the Counterfeiting Operation (the "*Ex Parte* Application for TRO and Asset Restraint") (DE 5), filed on April 19, 2011. A hearing on Plaintiff's *Ex Parte* Application took place on April 25, 2011. I have considered Plaintiff's *Ex Parte* Application and all affidavits and exhibits attached thereto, as well as the evidence and argument presented at the April 25 hearing, and am otherwise advised in the premises.

In the instant Application, Louis Vuitton Malletier, S.A., ("Louis Vuitton" or "Plainitff")—world-renowned manufacturer of handbags, wallets, watches, and other luxury consumer goods—seeks relief from counterfeiting activities which, upon information and belief, are being perpetrated over the Internet by Defendant Yanling Feng a/k/a Yilia Company and other unknown associates residing in the People's Republic of China (hereinafter, collectively,

"Defendants"). Specifically, Plaintiff moves, *ex parte*, for (a) entry of a temporary restraining order depriving Defendants of their means of doing business, namely, the domain names identified on Schedule A attached hereto (the "Subject Domain Names"); (b) an order freezing the financial accounts being used by Defendants to store their ill-gotten proceeds; and (c) before expiration of the temporary restraining order, a hearing on Plaintiff's motion for a preliminary injunction against Defendants. For the reasons set forth below, Plaintiff's *Ex Parte* Application for TRO and Asset Restraint is GRANTED.

## I. Findings of Fact

Based on Plaintiff's Complaint, *Ex Parte* Application for TRO and Asset Restraint, and supporting evidentiary submissions, and on the evidence introduced at the April 25 hearing on Plaintiff's Application, the Court hereby makes the following findings of fact.

Louis Vuitton is a foreign business entity organized under the laws of the Republic of France with its principal place of business in Paris, France. Louis Vuitton is engaged in the manufacture, promotion, distribution, and sale in interstate commerce, including within this Judicial District, of high quality products under the Louis Vuitton Marks. (Declaration of Nikolay Livadkin in Support of Plaintiff's *Ex Parte* Application for Entry of Temporary Restraining Order and Preliminary Injunction and Order Restraining Transfer of Assets Tied to the Counterfeiting Operation and Plaintiff's *Ex Parte* Application for Order Authorizing Alternate Service of Process ["Livadkin Decl."] ¶¶ 4-5).

Louis Vuitton is, and at all times relevant hereto has been, the owner of all rights in and to the following Federally-registered trademarks:

2

| Trademark | Registration No. | Registration Date |
|---|---|---|
|  | 0,297,594 | September 20, 1932 |
| LOUIS VUITTON | 1,045,932 | August 10, 1976 |
|  | 1,519,828 | January 10, 1989 |
|  | 1,794,905 | September 28, 1993 |
|  | 1,938,808 | November 28, 1995 |
| LOUIS VUITTON | 1,990,760 | August 6, 1996 |
|  | 2,177,828 | August 4, 1998 |
|  | 2,181,753 | August 18, 1998 |
|  | 2,255,321 | June 22, 1999 |
| LOUIS VUITTON PARIS | 2,346,373 | May 2, 2000 |
|  | 2,361,695 | June 27, 2000 |
|  | 2,399,161 | October 31, 2000 |
|  | 2,421,618 | January 16, 2001 |
|  | 2,773,107 | October 14, 2003 |
| SPEEDY | 3,512,709 | October 7, 2008 |

3

(collectively, the "Louis Vuitton Marks") which are registered in International Classes 14, 18 and 25, and are used in connection with the manufacture and distribution of, among other things, handbags, wallets, watches, belts, neckties, shoes, boots, and jewelry. (Livadkin Decl. ¶ 4, Comp. Ex. A).

Defendants have advertised, offered for sale, and/or sold handbags, wallets, watches, belts, neckties, shoes, boots, and jewelry bearing what Plaintiff has determined to be counterfeits, reproductions, and/or colorable imitations of the Louis Vuitton Marks. (Livadkin Decl. ¶¶ 11-14; Declaration of Eric Rosaler in Support of Plaintiff's *Ex Parte* Application for Entry of Temporary Restraining Order and Preliminary Injunction and Order Restraining Transfer of Assets Tied to the Counterfeiting Operation and Plaintiff's *Ex Parte* Application for Order Authorizing Alternate Service of Process ["Rosaler Decl."] ¶ 4 and Comp. Ex. A attached thereto; Declaration of Brandon Tanori in Support of Plaintiff's *Ex Parte* Application for Entry of Temporary Restraining Order and Preliminary Injunction and Order Restraining Transfer of Assets Tied to the Counterfeiting Operation and Plaintiff's *Ex Parte* Application for Order Authorizing Alternate Service of Process ["Tanori Decl."] ¶ 4 and Comp. Ex. A attached thereto). Defendants are not now, nor have they ever been, authorized or licensed to use, reproduce, or make counterfeits, reproductions, and/or colorable imitations of the Louis Vuitton Marks. (Livadkin Decl. ¶ 9).

Plaintiff retained Brandon Tanori ("Tanori") of Investigative Consultants and Eric Rosaler ("Rosaler") of AED Investigations to investigate suspected sales of counterfeit Louis Vuitton branded products by Defendants. (Livadkin Decl. ¶ 10; Tanori Decl. ¶ 3, Rosaler Decl. ¶ 3). Tanori accessed the Internet website operating under the domain name

louisvuittonoutletbag.com and placed an order for the purchase of a Louis Vuitton branded handbag, to be shipped directly to his address in Clearwater, Florida. (Tanori Decl. ¶ 4, Comp. Ex. A). Tanori finalized payment for the handbag via the Western Union Financial Services, Inc. ("Western Union") account of the Defendant Yanling Feng and was given a Money Transfer Control Number ("MTCN") of 0467977696. Subsequently, Rosaler accessed the Internet website operating under the domain name louisvuittonoutletsaled.com, and finalized purchase of a Louis Vuitton branded handbag, to be shipped directly to his address in Aventura, Florida. (Rosaler Decl. ¶ 4, Comp. Ex. A). Thereafter, a representative of Louis Vuitton, Nikolay Livadkin, reviewed and visually inspected the web page listings of the Louis Vuitton branded handbags purchased by Tanori and Rosaler, and determined the items were non-genuine Louis Vuitton products. (Livadkin Decl. ¶¶ 11-12). Additionally, Livadkin reviewed and visually inspected the items bearing the Louis Vuitton Marks offered for sale on the Internet websites operating under the Subject Domain Names and determined the products were non-genuine Louis Vuitton products. (Livadkin Decl. ¶ 13-14).

Plaintiff has attempted to locate physical addresses for Defendants to facilitate notice of the pendency of this action, but despite the best efforts of experienced investigators, location of accurate physical addresses for Defendants has been unsuccessful. (Tanori Decl. ¶¶ 7-10; Declaration of Huang Yu Ting in Support of Plaintiff's *Ex Parte* Application for Entry of Temporary Restraining Order and Preliminary Injunction and Order Restraining Transfer of Assets Tied to the Counterfeiting Operation and Plaintiff's *Ex Parte* Application for Order Authorizing Alternate Service of Process ["Ting Decl."] ¶¶ 2-5).

## II. Legal Standard

"[A] temporary restraining order is an emergency remedy which should only be issued in exceptional circumstances." *Emerging Vision, Inc. v. Glachman*, 2010 WL 3293346, at *4 (S.D. Fla. June 29, 2010) (internal citations omitted). To obtain a temporary restraining order, a plaintiff must make the following four-prong showing: "(1) [that there is] a substantial likelihood of success on the merits; (2) that irreparable injury will be suffered if the relief is not granted; (3) that the threatened injury outweighs the harm the relief would inflict on the non-movant; and (4) that the entry of the relief would serve the public interest." *Schiavo ex rel. Schindler v. Schiavo*, 403 F.3d 1223, 1225-26 (11th Cir. 2005). Because the Plaintiff here seeks to restrict Defendants' business activities immediately and without giving prior notice (such as might give Defendants an opportunity to redirect their customer traffic to alternate websites), it is also imperative that it set forth "specific facts . . . clearly show[ing] that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition" and that the movant "certifies in writing efforts made to give notice and the reasons why it should not be required." FED. R. CIV. P. 65(b). These requirements are not mere "technical legal niceties," *American Can Co. v. Mansukhani*, 742 F.2d 314, 324 (7th Cir. 1984), but rather "stringent restrictions" based on the precept that "our entire jurisprudence runs counter to the notion of court action taken before reasonable notice and an opportunity to be heard has been granted both sides of a dispute." *Granny Goose Foods, Inc. v. Bhd. of Teamsters*, 415 U.S. 423, 438-39, 94 S.Ct. 1113, 39 L.Ed.2d 435 (1974).

Pursuant to Title 15, United States Code, Section 1116(a), district courts "have power to grant injunctions, according to the principles of equity and upon such terms as the Court may

deem reasonable, to prevent the violation of any right of the registrant of a mark registered in the Patent and Trademark Office . . . ." 15 U.S.C. § 1116(a).

## III. Conclusions of Law

Based upon this Court's findings of fact and the standards for obtaining temporary injunctive relief just enunciated, I hereby make the following conclusions of law.

A.       Plaintiff has a very strong probability of prevailing on its claims for trademark infringement, false designation of origin, and cyberpiracy.

A defendant is liable for trademark infringement if, without the consent of the registrant, he or she uses "in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark, which is likely to cause confusion, or to cause mistake, or to deceive." 15 U.S.C. § 1114(1)(a). In evaluating whether a reproduction or copy of a trademark is "likely to confuse," the Eleventh Circuit applies a seven-factor test, taking into account (1) the strength of the mark; (2) the similarity of marks; (3) the similarity of the goods; (4) similarity of the sales methods; (5) the similarity of advertising media; (6) defendants' intent; and (7) evidence of actual confusion. *See Ross Bicycles, Inc. v. Cycles USA, Inc.*, 765 F.2d 1502, 1506 (11th Cir. 1985). Based on Plaintiff's submissions, the likelihood that Defendants' activities will create confusion in the marketplace is strong. Defendants are using marks which are, to both the trained eye as well as its lay judicial counterpart, indistinguishable from the Louis Vuitton Marks, and, furthermore, are selling the same types of goods Louis Vuitton sells.

To make out a false designation of origin claim, a plaintiff must prove: (1) that its mark is inherently distinctive or has acquired secondary meaning; (2) its mark is primarily non-

7

functional; and (3) as with a trademark infringement claim, that defendant's mark is "confusingly similar." *Univ. of Florida v. KPB, Inc.*, 89 F.3d 773, 776-77 (11th Cir. 1996). It is hardly contestable that Louis Vuitton's marks are famous and non-functional. Plaintiff's evidence establishes the third element of substantial similarity to the satisfaction of this Court. (*Compare* Louis Vuitton's Trademark Registrations (Livadkin Decl., Comp. Ex. A) with Defendants' Websites (Gigante Decl., Comp. Ex. A)).

To prevail on a cyberpiracy claim pursuant to the Anticybersquatting Consumer Protection Act ("ACPA"), 15 U.S.C. § 1125(d), Louis Vuitton must prove that "(1) its Marks are distinctive or famous and entitled to protection; (2) the Defendants' domain names are identical or confusingly similar to the Louis Vuitton Marks; and (3) the Defendants registered or used the domain names with a bad faith intent to profit." *Bavaro Palace, S.A. v. Vacation Tours, Inc.*, 203 Fed. App'x 252, 256 (11th Cir. 2006). Plaintiff's evidence as to each of these elements is compelling. Nearly all of the domain names identified in Schedule A incorporate at least one of the Louis Vuitton Marks in its entirety, surrounded by generic sales terms, rendering the marks nearly identical to Louis Vuitton's. *See, e.g., Victoria's Cyber Secret Ltd. P'ship v. V Secret Catalogue, Inc.*, 161 F.Supp.2d 1339, 1351 (S.D. Fla. 2001) ("The taking of an identical copy of another's famous and distinctive trademark for use as a domain name creates a presumption of confusion among Internet users as a matter of law.").

B.       Because of the infringement of the Louis Vuitton Marks, Plaintiff is likely to suffer immediate and irreparable injury if a temporary restraining order is not granted. The following facts, set forth in Plaintiff's *Ex Parte* Application for TRO and Asset Restraint and accompanying declarations, establish that immediate and irreparable loss, damage, and injury

will result to Plaintiff before Defendants can be heard in opposition unless Plaintiff's request for *ex parte* relief is granted:

        1.       Defendants are operating Internet businesses which advertise, offer for sale, and sell, at least, handbags, wallets, watches, belts, neckties, shoes, boots, and jewelry bearing counterfeit and infringing trademarks in violation of Plaintiff's rights.

        2.       There is good cause to believe that more counterfeit and infringing handbags, wallets, watches, belts, neckties, shoes, boots, and jewelry bearing Plaintiff's trademarks will appear in the marketplace; that consumers may be misled, confused, and disappointed by the quality of these products; and that Plaintiff may suffer loss of sales for its genuine products. *See Ferrellgas Ptnrs., L.P. v. Barrow*, 143 Fed. App'x 180, 191 (11th Cir. 2005) ("[A] sufficiently strong showing of likelihood of confusion [caused by trademark infringement] may by itself constitute a showing of . . . [a] substantial threat of irreparable harm.").

        3.       There is good cause to believe that if Plaintiff proceeds on notice to Defendants on this *Ex Parte* Application for TRO and Asset Restraint, Defendants can easily and quickly transfer the registrations for many of the Subject Domain Names, or modify registration data and content, change hosts, and redirect traffic to other websites, thereby thwarting Plaintiff's ability to obtain meaningful relief.

        C.       The balance of potential harm to Defendants in restraining their trade in counterfeit and infringing branded goods if a temporary restraining order is issued is far outweighed by the potential harm to Plaintiff, its reputation and goodwill as a manufacturer of

high quality handbags, wallets, watches, belts, neckties, shoes, boots, and jewelry, if such relief is not issued.

      D.      The public interest favors issuance of the temporary restraining order in order to protect Plaintiff's trademark interests and protect the public from being defrauded by the palming off of counterfeit goods as genuine goods of the Plaintiff. *See Nike, Inc. v. Leslie*, 227 U.S.P.Q. 574, 575 (M.D. Fla. 1985) ("[A]n injunction to enjoin infringing behavior serves the public interest in protecting consumers from such behavior.").

      E.      Under 15 U.S.C. § 1117(a), Plaintiff may be entitled to recover, as an equitable remedy, the illegal profits gained through Defendants distribution and sales of counterfeit and infringing Louis Vuitton branded goods. *See Reebok Int'l, Ltd. v. Marnatech Enters., Inc.*, 970 F.2d 552, 559 (9th Cir. 1992).

      F.      Requesting equitable relief "invokes the district court's inherent equitable powers to order preliminary relief, including an asset freeze, in order to assure the availability of permanent relief." *Levi Strauss & Co. v. Sunrise Int'l Trading Inc.*, 51 F.3d 982, 987 (11th Cir. 1995) (citing *Federal Trade Commission v. United States Oil and Gas Corp.*, 748 F.2d 1431, 1433-34 (11th Cir. 1984)).

      G.      In light of the inherently deceptive nature of the counterfeiting business, and Defendants' violation of the federal trademark laws, Plaintiff has good reason to believe Defendants will hide or transfer their ill-gotten assets beyond the jurisdiction of this Court unless those assets are restrained.

      Upon review of Plaintiff's Complaint, *Ex Parte* Application for TRO and Asset Restraint, and supporting evidentiary submissions, it is hereby

10

**ORDERED AND ADJUDGED** that Plaintiff's *Ex Parte* Application for TRO and Asset Restraint is **GRANTED**, according to the terms set forth below:

## TEMPORARY RESTRAINING ORDER

(1)     Defendants, their officers, directors, employees, agents, subsidiaries, distributors, and all persons in active concert or participation with Defendants having notice of this Order are hereby temporarily restrained:

      a.  From manufacturing, importing, advertising, promoting, offering to sell, selling, distributing, or transferring any products bearing the Louis Vuitton Marks, or any confusingly similar trademarks, other than those actually manufactured or distributed by Plaintiff; and

      b.  From secreting, concealing, destroying, selling off, transferring, or otherwise disposing of: (i) any products, not manufactured or distributed by Plaintiff, bearing the Louis Vuitton Marks, or any confusingly similar trademarks; or (ii) any evidence relating to the manufacture, importation, sale, offer for sale, distribution, or transfer of any products bearing the Louis Vuitton Marks, or any confusingly similar trademarks.

(2)     Defendants, their officers, directors, employees, agents, subsidiaries, distributors, and all persons in active concert or participation with Defendants having notice of this Order shall immediately discontinue the use of the Louis Vuitton Marks or any confusingly similar trademarks, on or in connection with all Internet websites owned and operated, or controlled by them including the Internet websites operating under the Subject Domain Names;

(3)     Defendants, their officers, directors, employees, agents, subsidiaries, distributors, and all persons in active concert or participation with Defendants having notice of this Order shall immediately discontinue the use of the Louis Vuitton Marks, or any confusingly similar trademarks within domain name extensions, metatags or other markers within website source code, from use on any webpage (including as the title of any web page), any advertising links to

11

other websites, from search engines' databases or cache memory, and any other form of use of such terms which is visible to a computer user or serves to direct computer searches to websites registered by, owned, or operated by Defendants, including the Internet websites operating under the Subject Domain Names;

(4)    Defendants shall not transfer ownership of the Subject Domain Names during the pendency of this Action, or until further Order of the Court;

(5)    The domain name Registrars for the Subject Domain Names are directed to transfer to Plaintiff's counsel, for deposit with this Court, domain name certificates for the Subject Domain Names;

(6)    The top-level domain (TLD) Registries for the Subject Domain Names, within ten (10) days of receipt of this Temporary Restraining Order shall change the registrar of record for the Subject Domain Names to a holding account with the United States based Registrar, GoDaddy.com, Inc.    Upon transfer of the Subject Domain Names into the holding account, GoDaddy.com, Inc. will hold the Subject Domain Names in trust for the Court during the pendency of this action.    Additionally, GoDaddy.com, Inc. shall immediately update the Domain Name System ("DNS") data it maintains for the Subject Domain Names, which links the domain names to the IP addresses where their associated websites are hosted, to NS1.MEDIATEMPLE.NET and NS2.MEDIATEMPLE.NET, which will cause the domain names to resolve to the website where a copy of the Complaint, Summonses, and Temporary Restraining Order and other documents on file in this action are displayed.    Alternatively, GoDaddy.com, Inc. may institute a domain name forwarding which will automatically redirect any visitor to the Subject Domain Names to the following Uniform Resource Locator ("URL")

12

http://servingnotice.com/feng/index.html whereon a copy of the Complaint, Summonses, and Temporary Restraining Order and other documents on file in this action are displayed. After GoDaddy.com, Inc. has effected this change the Subject Domain Names shall be placed on Lock status, preventing the modification or deletion of the domains by the registrar or Defendants;

(7)     Plaintiff may enter the Subject Domain Names into Google's Webmaster Tools and cancel any redirection of the domains that have been entered there by Defendants which redirect traffic to the counterfeit operations to a new domain name and thereby evade the provisions of this Order;

(8)     Defendants shall preserve copies of all their computer files relating to the use of any of the Subject Domain Names and shall take all steps necessary to retrieve computer files relating to the use of the Subject Domain Names that may have been deleted before the entry of this Order;

(9)     This Temporary Restraining Order shall remain in effect until the date for the hearing on the Motion for Preliminary Injunction set forth below, or until such further dates as set by the Court or stipulated to by the parties;

(10)    Upon receipt of this Order, Western Union shall divert all money transfers sent by United Stated consumers to Yanling Feng in Fujian, Xiamen, People's Republic of China, 361000, with the date of birth and identification number provided by the recipient of MTCN 0467977696, and hold such transfers until it receives further direction from the Court;[1]

---

[1]

Western Union is licensed to do business in the State of Florida by the Florida Office of Financial Regulation and is therefore subject to personal jurisdiction in this State. (*See* Declaration of Virgilio Gigante in Support of Plaintiff's *Ex Parte* Application for Entry of Temporary Restraining Order and Preliminary Injunction and Order Restraining Transfer of Assets Tied to the Counterfeiting Operation and Plaintiff's *Ex Parte* Application for Order Authorizing Alternate Service of Process ["Gigante Decl."] ¶ 14 and Comp. Ex. J attached thereto.

(11)    In the event any money transfers are diverted in accordance with Paragraph 10 of this Order, Western Union shall be permitted to inform consumers who may contact Western Union about the transfers that the transfers are being held pursuant to a Court Order in <u>Louis Vuitton Malletier, S.A. v. Feng</u>, Case 11-cv-60811, entered by the United States District Court for the Southern District of Florida and that they may contact Plaintiff's counsel for additional information;

(12)    Western Union shall also, within five business days of receiving this Order, provide to Plaintiff's counsel records of all money transfers that have been paid to Yanling Feng in Fujian, Xiamen, People's Republic of China, 361000, with the date of birth and identification number provided by the recipient of MTCN 0467977696, as well as records of money transfers that have been diverted in accordance with Paragraph 10 of this Order. For any transfers that have been diverted in accordance with this Order, the Plaintiff's counsel will respond to any consumer inquiries and will provide notice of the Order and the disposition of the transfers to any affected consumer. Western Union shall receive and maintain this Order and its contents as confidential as to Yanling Feng and any other recipient associated with the MTCN 0467977696, until further order of this Court;

**BOND TO BE POSTED**

(13)    Pursuant to 15 U.S.C. § 1116(d)(5)(D), Plaintiff shall post a bond in the amount of Ten Thousand  Dollars and Zero Cents ($10,000.00), as payment of damages to which Defendants may be entitled for a wrongful injunction or restraint. Plaintiff shall post the bond prior to requesting the Registry to transfer control of the Subject Domain Names;

14

## HEARING

(14)    A hearing is set before this Court in the United States Courthouse located at 701 Clematis Street #257, West Palm Beach, Florida 33401, Courtroom 7, on **Monday, May 16, 2011 at 11:30 a.m.**, or at such other time that this Court deems appropriate, at which time Defendants and/or any other affected persons may challenge the appropriateness of this Order and move to dissolve the same and at which time the Court will hear argument on Plaintiff's requested preliminary injunction;

(15)    Plaintiff shall serve a copy of the *Ex Parte* Application for TRO and Asset Restraint and this Order on Defendants via their known e-mail addresses; specifically, upon Defendant Feng at the e-mail addresses xmylgs@126.com, 1013400790@qq.com, pallaviservice@hotmail.com, lemonadeservice@hotmail.com, jodieservice@hotmail.com, kingsceo@hotmail.com, joyinservice@hotmail.com, veronicaservice@hotmail.com, and lemonagency@hotmail.com. In addition, Plaintiff shall post a copy of the *Ex Parte* Application for TRO and Asset Restraint and this Order on the website located at http://servingnotice.com/feng/index.html, upon transfer of the Subject Domain Names into the holding account with GoDaddy.com, Inc., and such notice so given shall be deemed good and sufficient service thereof.  Any response or opposition to Plaintiff's Motion for Preliminary Injunction must be filed and served on Plaintiff's counsel by **Tuesday, May 10, 2011**. Plaintiff shall file any Reply Memorandum on or before **Friday, May 13, 2011.**  The above dates may be revised upon stipulation by all parties and approval of this Court. Defendants are hereby on notice that failure to appear at the hearing may result in the imposition of a preliminary injunction against them pursuant to 15 U.S.C. § 1116(d) and Fed. R. Civ. P. 65.

15

(16)    This temporary restraining order shall remain in effect until **Friday, May 20, 2011 at 5:00 p.m.**, or until such other time as the Court deems appropriate, to prevent Plaintiff from suffering any additional harm during the pendency of the motion for preliminary injunction.

**DONE AND ORDERED** in Chambers in West Palm Beach, Florida, this 25 day of April, 2011.

DONALD M. MIDDLEBROOKS
UNITED STATES DISTRICT JUDGE

cc:    All Counsel of Record

## SCHEDULE "A"
## SUBJECT DOMAIN NAMES

1.  bestlouisvuittonbags.com
2.  cheaplouisvuittonoutlet2u.com
3.  cheaplouisvuittonoutletsale.com
4.  louisvuittonclearancer.com
5.  louisvuittonclearances.com
6.  louisvuittonclearances.net
7.  louisvuittonhandbagssell.com
8.  louisvuittonlovers.com
9.  louisvuittononlines.com
10. louisvuittonoutletbag.com
11. louisvuittonoutletbiz.com
12. louisvuittonoutletclearance.com
13. louisvuittonoutlethotsale.com
14. louisvuittonoutletonsale.com
15. louisvuittonoutletonshop.com.
16. louisvuittonoutletsale.com
17. louisvuittonoutletsaled.com
18. louisvuittonoutletsaler.com
19. louisvuittonoutletseller.com
20. louisvuittonoutletwholesale.com
21. louisvuittonoutletzone.com
22. louisvuittonsaleoutlet.net
23. louisvuittonselling.com
24. louisvuittonselling.net
25. louis-vuitton-shoes.net
26. louisvuittonzones.com
27. lvbagsoutlets.com
28. lvonshop.com
29. newlouisvuittonbags.com
30. salelouisvuittonoutlet.com

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
### CASE NO. 0:11-cv-60611-WPD

LOUIS VUITTON MALLETIER, S.A.,
a foreign business entity,

        Plaintiff,               **FILED UNDER SEAL**

vs.

FEI YAN LI a/k/a OSCAR CARTER
and DOES 1-10,

        Defendants.

_____/

### ORDER GRANTING PLAINTIFF'S *EX PARTE* APPLICATION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION RESTRAINING TRANSFER OF DEFENDANT'S ASSETS TIED TO THE COUNTERFEITING OPERATION AND ORDER TEMPORARILY SEALING A PORTION OF THE COURT FILE

THIS CAUSE is before the Court on Plaintiff's *Ex Parte* Application For Temporary Restraining Order and Preliminary Injunction Restraining Transfer of Defendant's Assets Tied to the Counterfeiting Operation and Order Temporarily Sealing A Portion of the Court File (the "*Ex Parte* Application to Restrain Assets"). Plaintiff Louis Vuitton Malletier, S.A. ("Louis Vuitton" or "Plaintiff"), moves on an *ex parte* basis, for entry of an order freezing the financial accounts used by the Defendant Fei Yan Li a/k/a Oscar Carter ("Defendant") d/b/a the domain names identified on Schedule "A" hereto (the "Subject Domain Names") and for entry of an order temporarily sealing the relevant portion of the Court file. For reasons set forth herein, Plaintiff's *Ex Parte* Application to Restrain Assets is GRANTED.

1

The Court bases this Order on the following facts from Plaintiff's *Ex Parte* Application, and supporting evidentiary submissions, including the Declarations of Eric Rosaler and Stephen M. Gaffigan and the Exhibits thereto. Specifically:

1) As provided by the Lanham Act, Plaintiff may be entitled to recover the illegal profits gained through Defendant's distribution and sales of counterfeit and infringing Louis Vuitton branded goods. See 15 USC 1117(a).

2) Plaintiff recently obtained conclusive evidence that Defendant controls at least one account with MoneyGram International, Inc., also d/b/a MoneyGram Payment Systems, Inc., (collectively, "MoneyGram") for which the recipient name is Fei Yan Li, which is used as a method to receive monies generated through the sale of counterfeit goods via the Defendant's websites at issue. (*See* Declaration of Eric Rosaler in Support of Plaintiff's *Ex Parte* Application to Restrain Assets ¶¶ 4-6, filed herewith, and Composite Exhibits 1 and 2 attached thereto.)

3) Specifically, as part of its ongoing investigation regarding the sale of counterfeit products, Plaintiff retained Eric Rosaler ("Rosaler") of AED Investigations, Inc., to further investigate the sale of counterfeit Louis Vuitton branded products by Defendant. (*See* Declaration of Eric Rosaler in Support of Plaintiff's *Ex Parte* Application to Restrain Assets ¶ 3.) Rosaler accessed one of the Internet websites operated by Defendant, louisvuittonbootslv.info, and placed an order for the purchase of a replica Louis Vuitton handbag, to be shipped directly to his address located in North Miami Beach, Florida. (*See* Declaration of Eric Rosaler in

2

Support of Plaintiff's *Ex Parte* Application to Restrain Assets ¶¶ 4, 5 and Composite Exhibit 1 attached thereto.)

4)   Rosaler finalized payment for the Louis Vuitton branded handbag via MoneyGram to the MoneyGram account of the Defendant Fei Yan Li. (*See* Declaration of Eric Rosaler in Support of Plaintiff's *Ex Parte* Application to Restrain Assets ¶ 5 and Composite Exhibit 2 attached thereto.) The website from which the Louis Vuitton branded handbag was purchased by Rosaler, louisvuittonbootslv.info, identifies the goods sold via the website as "replica." (*See* Declaration of Eric Rosaler in Support of Plaintiff's *Ex Parte* Application to Restrain Assets ¶ 6 and Composite Exhibit 2 attached thereto.)

5)   Plaintiff's representative, Nikolay Livadkin identified the goods sold via louisvuittonbootslv.info as imitation goods bearing counterfeits of Plaintiff's world famous trademarks. (*See* Declaration Nikolay Livadkin in Support of Plaintiff's *Ex Parte* Application for Entry of Temporary Restraining Order and Preliminary Injunction and Plaintiff's *Ex Parte* Application for Order Authorizing Alternate Service of Process ¶¶ 11-13.)

6)   MoneyGram is licensed to do business in the State of Florida under Fla. Stat. § 560 and is therefore subject to personal jurisdiction in this State. (*See* Declaration of Stephen M. Gaffigan in Support of Plaintiff's *Ex Parte* Application to Restrain Assets ¶ 4, filed herewith, and Exhibit 4 attached thereto.)

7)   In light of the inherently deceptive nature of the counterfeiting business, and Defendant's blatant violation of the federal trademark laws, Plaintiff has good

reason to believe Defendant will secrete or transfer his ill-gotten assets beyond the jurisdiction of this Court unless those assets are restrained.

Accordingly, it is ORDERED and ADJUDGED:

(1)     Upon receipt of this Order, MoneyGram International, Inc., also d/b/a MoneyGram Payment Systems, Inc., (collectively, "MoneyGram") shall divert all money transfers sent to Fei Yan Li in Putian City, Fujian Province, People's Republic of China, and any other recipient associated with the transfer Reference Number: 43846304 issued on March 21, 2011, and hold such transfers in trust for the Court until it receives a further order from the Court.

(2)     In the event any money transfers are diverted in accordance with Paragraph 1 of this Order, MoneyGram shall be permitted to inform consumers who may contact MoneyGram about the transfers that the transfers are being held pursuant to a Court Order in Louis Vuitton Malletier, S.A. v. Fei Yan Li entered by the United States District Court for the Southern District of Florida and that they may contact Plaintiff's counsel for additional information.

(3)     MoneyGram shall, within two days of receiving this Order, also provide to Plaintiff's counsel records of all money transfers that have been paid to Fei Yan Li in Putian City, Fujian Province, People's Republic of China, and any other recipient associated with the transfer Reference Number: 43846304 issued on March 21, 2011, as well as records of money transfers that have been diverted in accordance with Paragraph 1 of this Order.  For any transfers that have been diverted in accordance with this Order, the Plaintiff's counsel will respond to any consumer inquiries by providing notice of this Order and the disposition of the transfers to any affected consumer.  MoneyGram shall receive and maintain this Order and its contents as

confidential as to Fei Yan Li and any other recipient associated with the transfer Reference Number: 43846304 issued on March 21, 2011, until further order of this Court.

## BOND

(4)    Plaintiff shall post a bond in the amount of Ten Thousand Dollars and Zero Cents ($10,000.00), as payment of damages to which Defendant may be entitled for a wrongful injunction or restraint.  Plaintiff may be required by further order to increase the bond posted in this matter if the monies frozen in Defendant's accounts exceed $10,000.00.

## HEARING

(5)    A hearing is set before this Court in the United States Courthouse located at 299 E. Broward Blvd Ft. Lauderdale, FL courtroom 205B, on April 11, 2011, at 10:00 a.m., or at such other time that this Court deems appropriate, at which time Defendant and/or any other affected persons may challenge the appropriateness of this Order and move to dissolve the same and at which time the Court will hear argument on Plaintiff's requested preliminary injunction.

(6)    Plaintiff shall serve a copy of the *Ex Parte* Application to Restrain Assets and this Order on Defendant via his known e-mail addresses immediately after receiving written notice that the relevant accounts subject to this Order have been secured.

## SEAL ORDER

(7)    It is further **ORDERED** that for good cause shown, Plaintiff's Motion for Order Temporarily Sealing a Potion of the Court File is **GRANTED**.  The *Ex Parte* Application to Restrain Assets and supporting Declarations of Eric Rosaler and Stephen M. Gaffigan and this Order shall remain sealed until the MoneyGram accounts subject to this Order are secured.  At

//

that time, Plaintiff shall immediately file a Motion to Unseal the File.

**DONE AND ORDERED** in Chambers at Ft Lauderdale, Florida, this _28_ of _March_ 2011.

WILLIAM P. DIMITROULEAS
UNITED STATES DISTRICT JUDGE

cc:    All Counsel of Record

6

## SCHEDULE "A"
## SUBJECT DOMAIN NAMES

1. louisvuittonbootslv.info
2. louisvuittonbootsbrand.info
3. louisvuittonbootsbrown.info
4. louisvuittonbootsfashion.info
5. louisvuittonbootsnewest.info
6. louisvuittonbootsshow.info
7. louisvuittonbootstop.info
8. louisvuittonbootsworld.info
9. louisvuittonbrandboots.info
10. louisvuittonbrownboots.info
11. louisvuittonfashionboots.info
12. louisvuittonhotboots.info
13. louisvuittonlvboots.info
14. louisvuittonnewestboots.info
15. louisvuittonnewestproducts.info
16. louisvuittonshowboots.info
17. louisvuittonshowlv.info
18. louisvuittontopboots.info
19. louisvuittonworldboots.info
20. louisvuittonbootshot.info
21. hotlouisvuittonboots.info
22. lvbootslouisvuitton.info
23. lvlouisvuittonboots.info
24. bootslouisvuittonnewest.com

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

CASE NO. 11-60417-CIV-DIMITROULEAS/SNOW

CHANEL, INC.,
a New York corporation,

        Plaintiff,

    v.

FEI YAN LI a/k/a OSCAR CARTER
and DOES 1-10,

        Defendants.

_____/

**FILED UNDER SEAL**

FILED BY _____ D.C.

STEVEN M. LARIMORE
CLERK U.S. DIST. CT.
S.D. OF FLA-FTL

2011 MAR -3  PM 4:04

## ORDER GRANTING PLAINTIFF'S *EX PARTE* APPLICATION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION RESTRAINING TRANSFER OF DEFENDANT'S ASSETS TIED TO THE COUNTERFEITING OPERATION AND ORDER TEMPORARILY SEALING A PORTION OF THE COURT FILE

THIS CAUSE is before the Court on Plaintiff's *Ex Parte* Application For Temporary Restraining Order and Preliminary Injunction Restraining Transfer of Defendant's Assets Tied to the Counterfeiting Operation and Order Temporarily Sealing A Portion of the Court File (the "*Ex Parte* Application to Restrain Assets"). Plaintiff Chanel, Inc. ("Chanel" or "Plaintiff"), moves on an *ex parte* basis, for entry of an order freezing the financial accounts used by the Defendant Fei Yan Li a/k/a Oscar Carter ("Defendant") d/b/a the domain names identified on Schedule "A" hereto (the "Subject Domain Names") and for entry of an order temporarily sealing the relevant portion of the Court file. For reasons set forth herein, Plaintiff's *Ex Parte* Application to Restrain Assets is GRANTED.

The Court bases this Order on the following facts from Plaintiff's *Ex Parte* Application, and supporting evidentiary submissions, including the Declarations of Eric Rosaler and Stephen M. Gaffigan and the Exhibits thereto. Specifically:

1) As provided by the Lanham Act, Plaintiff may be entitled to recover the illegal profits gained through Defendant's distribution and sales of counterfeit and infringing Chanel branded goods. See 15 USC 1117(a)

2) Plaintiff recently obtained conclusive evidence that Defendant controls at least one account with The Western Union Company ("Western Union") for which the recipient name is Fei Yan Li, which is used as a method to receive monies generated through the sale of counterfeit goods via the Defendant's websites at issue. (*See* Declaration of Eric Rosaler in Support of Plaintiff's *Ex Parte* Application to Restrain Assets ¶¶ 4-6, filed herewith, and Composite Exhibits 1 and 2 attached thereto.)

3) Specifically, as part of its ongoing investigation regarding the sale of counterfeit products, Plaintiff retained Eric Rosaler ("Rosaler") of AED Investigations, Inc., to further investigate the sale of counterfeit Chanel branded products by Defendant. (*See* Declaration of Eric Rosaler in Support of Plaintiff's *Ex Parte* Application to Restrain Assets ¶ 3.) Rosaler accessed one of the Internet websites operated by Defendant, chanelredboots.info, and placed an order for the purchase of a pair of replica Chanel earrings, to be shipped directly to his address located in Aventura, Florida. (*See* Declaration of Eric Rosaler in Support of Plaintiff's *Ex Parte* Application to Restrain Assets ¶ 4 and Composite Exhibit 1 attached thereto.)

2

Case 1:11-cv-23051-DLG   Document 5-4   Entered on FLSD Docket 08/31/2011   Page 65 of 92
Case 0:11-cv-60417-WPD   Document 19 *SEALED*   Entered on FLSD Docket 03/04/2011   Page
3 of 6

4)   Rosaler finalized payment for the earrings via Western Union to the Western Union account of the Defendant Fei Yan Li. (*See* Declaration of Eric Rosaler in Support of Plaintiff's *Ex Parte* Application to Restrain Assets ¶ 5 and Composite Exhibit 2 attached thereto.) The website from which the Chanel branded earrings were purchased by Rosaler, chanelredboots.info, identifies the earrings and other goods sold via the website as "replica." (*See* Declaration of Eric Rosaler in Support of Plaintiff's *Ex Parte* Application to Restrain Assets ¶ 6 and Composite Exhibit 3 attached thereto.)

5)   Plaintiff's representative, Adrienne Hahn Sisbarro identified the goods sold via chanelredboots.info as imitation goods bearing counterfeits of Plaintiff's world famous trademarks. (*See* Declaration of Adrienne Hahn Sisbarro in Support of Plaintiff's *Ex Parte* Application for Entry of Temporary Restraining Order and Preliminary Injunction and Plaintiff's *Ex Parte* Application for Order Authorizing Alternate Service of Process (D.E. 9) ¶¶ 12-13.)

6)   Western Union is licensed to do business in the State of Florida by the Florida Office of Financial Regulation and is therefore subject to personal jurisdiction in this State. (*See* Declaration of Stephen M. Gaffigan in Support of Plaintiff's *Ex Parte* Application to Restrain Assets ¶ 3, filed herewith, and Exhibit 3 attached thereto.)

7)   In light of the inherently deceptive nature of the counterfeiting business, and Defendant's blatant violation of the federal trademark laws, Plaintiff has good reason to believe Defendant will secrete or transfer his ill-gotten assets beyond the jurisdiction of this Court unless those assets are restrained.

3

Case 1:11-cv-23051-DLG   Document 5-4   Entered on FLSD Docket 08/31/2011   Page 66 of 92
Case 0:11-cv-60417-WPD   Document 19 *SEALED*   Entered on FLSD Docket 03/04/2011   Page
4 of 6

Accordingly, it is ORDERED and ADJUDGED:

(1)     Upon receipt of notice of this Order, Western Union and its related companies and affiliates shall immediately freeze all Western Union accounts related to the Western Union account recipient Fei Yan Li or which are associated with the Money Transfer Control Number ("MTCN") 430-807-1764 any other related accounts of the same customer.

(2)     Western Union shall also immediately divert to a holding account for the trust of the Court all funds currently in, or which during the pendency of this Order come in to, all Western Union accounts related to the Western Union account recipient Fei Yan Li or which are associated with the Money Transfer Control Number ("MTCN") 430-807-1764 any other related accounts of the same customer.

(3)     Western Union shall further, within two days of receiving this Order, provide Plaintiff's counsel with all data which identifies the Western Union accounts frozen as well as an accounting of the funds in the frozen accounts. Such freezing of the accounts and the disclosure of the related financial institution account information shall be made without notice to the account owners or the financial institutions until further order of this Court. Western Union shall receive and maintain this Order and its contents as confidential until further order of this Court.

## BOND

(4)     Plaintiff shall post a bond in the amount of Ten Thousand Dollars and Zero Cents ($10,000.00), as payment of damages to which Defendant may be entitled for a wrongful injunction or restraint. Plaintiff may be required by further order to increase the bond posted in this matter if the monies frozen in Defendant's accounts exceed $10,000.00.

4

## HEARING

(5)     A hearing is set before this Court in the United States Courthouse located at 299 East Broward Blvd, Ft. Lauderdale, Florida, Courtroom 205B, on March 14, 2011, at 10:00 a.m. or at such other time that this Court deems appropriate, at which time Defendant and/or any other affected persons may challenge the appropriateness of this Order and move to dissolve the same and at which time the Court will hear argument on Plaintiff's requested preliminary injunction.

(6)     Plaintiff shall serve a copy of the *Ex Parte* Application to Restrain Assets and this Order on Defendant via his known e-mail addresses immediately after receiving written notice that the relevant accounts subject to this Order have been secured.

## SEAL ORDER

(7)     It is further **ORDERED** that for good cause shown, Plaintiff's Motion for Order Temporarily Sealing a Potion of the Court File is **GRANTED**. The *Ex Parte* Application to Restrain Assets and supporting Declarations of Eric Rosaler and Stephen M. Gaffigan and this Order shall remain sealed until the Western Union accounts subject to this Order are secured. At that time, Plaintiff shall immediately file a Motion to Unseal the File.

**DONE AND ORDERED** in Chambers at Ft Lauderdale, Florida, this 3 day of March, 2011.

WILLIAM P. DIMITROULEAS
UNITED STATES DISTRICT JUDGE

cc:     All Counsel of Record

5

Case 1:11-cv-23051-DLG   Document 5-4   Entered on FLSD Docket 08/31/2011   Page 68 of 92
Case 0:11-cv-60417-WPD   Document 19 *SEALED*   Entered on FLSD Docket 03/04/2011   Page
6 of 6

## SCHEDULE "A"
## SUBJECT DOMAIN NAMES

1.  bootstrends.info
2.  chanelbootmid.info
3.  chanelbootmy.info
4.  chanelbootsbrown.info
5.  chanelbootscamellia.info
6.  chanelbootsflat.info
7.  chanelbootshot.info
8.  chanelbootsnew.info
9.  chanelbootspt.info
10. chanelbootsuk.info
11. chanelhighheelboots.info
12. chanelhotboots.info
13. chanelmidboot.info
14. chanelnewboots.info
15. chanelredboots.info
16. clbootshot.info

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 11-60171-CIV-ALTONAGA/Brown

TIFFANY (NJ), LLC,

   Plaintiff,

vs.

LIU ZHENG, *et al.*,

   Defendants.

_____/

ORDER GRANTING PLAINTIFF'S EX PARTE MOTION
FOR TEMPORARY RESTRAINING ORDER

   **THIS CAUSE** came before the Court upon Plaintiff, Tiffany (NJ), LLC's ("Tiffany['s]") *Ex*

*Parte* Application for Order Freezing Defendants' Assets Tied to the Counterfeiting Operation and

Order Temporarily Sealing a Portion of the Court File (the "*Ex Parte* Motion") [ECF No. 21], filed

on February 10, 2011. Tiffany's *Ex Parte* Motion asks the Court to enter an order freezing the

financial accounts used by the Defendants, Liu Zheng a/k/a Lao Zhang a/k/a Tan Xuemei, Xianhong

Ke a/k/a Chen Ling, and Qunren Xu and to temporarily seal a portion of the Court file. (*See Ex Parte*

Mot. 1). Tiffany seeks to "freez[e] the Defendants' identified PayPal account and the financial

institution accounts tied thereto" in order "to preserve [Plaintiff's] disgorgement remedy authorized

by Congress" (Mem. in Support 2 [ECF No 22]), and requests the Court seal the portion of the

record associated with the seizure so Defendants will not be tipped off and "attempt to hide, conceal,

and/or transfer their illegally obtained profits" (*id.* at 7).

Case No. 11-60171-CIV-Altonaga

Based on the affidavits and other evidentiary submissions provided by Tiffany with the *Ex Parte* Motion and recalling the findings of facts and conclusions of law the Court made in the February 1, 2011 Temporary Restraining Order [ECF No. 13], the Court finds the following:

1.   Under 15 U.S.C. section 1117(a), Tiffany may be entitled to recover, as an equitable remedy, the illegal profits gained through Defendants' distribution and sales of counterfeit and infringing Tiffany branded goods. *See Reebok Int'l, Ltd. v. Marnatech Enters., Inc.*, 970 F.2d 552, 559 (9th Cir. 1992) (quoting *Fuller Brush Products Co. v. Fuller Brush Co.*, 299 F.2d 772, 777 (7th Cir. 1962) ("An accounting of profits under § 1117(a) is not synonymous with an award of monetary damages: '[a]n accounting for profits . . . is an equitable remedy subject to the principles of equity.'").

2.   "A request for equitable relief invokes the district court's inherent equitable powers to order preliminary relief, including an asset freeze, in order to assure the availability of permanent relief." *Levi Strauss & Co. v. Sunrise Int'l Trading Inc.*, 51 F.3d 982, 987 (11th Cir. 1995) (citing *Federal Trade Commission v. United States Oil and Gas Corp.*, 748 F.2d 1431, 1433-34 (11th Cir. 1984)).

3.   Tiffany has provided evidence that Defendants control a PayPal associated with account I.D., ericlee917@gmail.com  That PayPal account is used as a method to receive payments for counterfeit goods sold via the Defendants' websites. (*See* 2d Decl. of Brandon Scott ¶ 4 ("Scott Decl.") [ECF No. 23]).

2

Case No. 11-60171-CIV-Altonaga

4.     Specifically, Tiffany hired an investigator who accessed one of the Internet websites operated by Defendant, tiffany-jewelry.co, and purchased a Tiffany Bracelet TFB044-1AF, to be shipped directly to his address located in Dania Beach, Florida. (*See* Scott Decl. ¶ 4; Scott Ex. 1 [ECF No. 23-1]).

5.     Scott finalized payment for the bracelet via PayPal to the PayPal account I.D. "ericlee917@gmail.com." The web page listing of the Tiffany bracelet purchased by Scott from tiffany-jewelry.com identifies the bracelet and other goods sold via the website as "replica" Tiffany jewelry. (Scott Ex. 1).

6.     Tiffany's representative, Steven Costello, identified the goods sold via tiffany-jewelry.co as imitation goods bearing counterfeits of Tiffany's world famous trademarks. (*See* Costello Decl. [ECF No. 8-1]).

7.     In light of the inherently deceptive nature of the counterfeiting business, and Defendants' blatant violation of the federal trademark laws, there is good reason to anticipate that Defendants will hide or transfer the profits acquired from the sale of the counterfeit goods beyond the jurisdiction of the Court unless those assets are restrained without prior notice to defendants.

Accordingly, it is

**ORDERED and ADJUDGED** as follows

1.     Upon receipt of notice of this Order, PayPal, Inc. and its affiliates shall immediately freeze all PayPal accounts related to the PayPal account I.D. "ericlee917@gmail.com." any other related accounts of the same customers and shall further, within two days of receiving this Order, provide counsel for Tiffany with all data which identifies the bank, credit or debit account number

3

Case No. 11-60171-CIV-Altonaga

and financial institution tied to each of the PayPal accounts frozen as well as an accounting of the funds in the frozen accounts. Such freezing of the accounts and the disclosure of the related financial institution account information shall be made without notice to the account owners or the financial institutions until further order of the Court. PayPal, Inc. shall receive and maintain this Order and its contents as confidential until further order of the Court.

2.      Upon identification of any financial institution accounts tied to the frozen PayPal accounts, those financial institution accounts and any other accounts in the same name or owned or controlled by the same customer shall also be immediately frozen by the respective financial institutions upon receipt of notice of this Order. Within two days of receiving notice of this Order, any financial institution subject to this Order shall provide Plaintiff's counsel with all data which identifies the owner of the financial institution accounts frozen as well as an accounting of the funds in the frozen accounts. Such freezing of the accounts and the disclosure of the related financial institution account information shall be made without notice to the account owners or operators until further order of the Court. Any financial institution subject to this Order shall receive and maintain this Order and its contents as confidential until further order of the Court.

**BOND**

3.      Plaintiff shall maintain its previously posted bond in the amount of Fifty Thousand Dollars and Zero Cents ($50,000.00), as payment of damages to which Defendants may be entitled for a wrongful injunction or restraint. Plaintiff may be required by further order to increase the bond posted in this matter if the monies frozen in Defendants' accounts exceed $50,000.00.

4

Case No. 11-60171-CIV-Altonaga

## HEARING

4.      A hearing is set before this Court in the United States Courthouse located at 400 N. Miami Avenue, Courtroom 12-2, on **February 14, 2011, at 8:30 a.m.**, at which time the Defendants and/or any other affected persons may challenge the appropriateness of this Order and move to dissolve the same.

5.      Plaintiff shall serve a copy of the *Ex Parte* Motion and this Order on Defendants via their known e-mail addresses immediately after receiving notice that the relevant accounts subject to this Order have been secured.

## SEAL ORDER

6.      It is further **ORDERED** that for good cause shown, Plaintiff's Motion for Order Temporarily Sealing a Potion of the Court File is **GRANTED**. The *Ex Parte* Motion and Memorandum in Support **[ECF Nos. 21, 22]**, supporting Second Declarations of Brandon Scott and Stephen M. Gaffigan **[ECF Nos. 23, 24]**, and this Order shall remain sealed until the PayPal and financial institution accounts subject to this Order are secured. At that time, Plaintiff shall immediately file a Motion to Unseal the File.

This Temporary Restraining Order expires at **4:30 p.m. on February 25, 2011**, unless extended for good cause.

**DONE AND ORDERED** in Chambers at Miami, Florida this 11th day of February, 2011.

*Cecilia M. Altonaga*

**CECILIA M. ALTONAGA**
**UNITED STATES DISTRICT JUDGE**

cc:     counsel of record

5

UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF FLORIDA
Miami Division

## Case Number: 10-62489-CIV-MARTINEZ-BROWN

CHANEL, INC.,

      Plaintiff,

vs.

JUN ZHU and DOES 1-10,

      Defendants.

_____/

## SEALED OMNIBUS ORDER

THIS CAUSE came before the Court upon Plaintiff's Ex Parte Application for: (A) Entry of Temporary Restraining Order with Asset Freeze; (B) Preliminary Injunction; (C) Order Authorizing Alternate Service of Process on Defendant; and (D) Order Temporarily Sealing the Court File. Plaintiff Chanel, Inc. ("Chanel") has filed this action alleging violations of the Lanham Act, 15 U.S.C. §§ 1114, and 1125(a) and (d). Plaintiff moves ex parte, for entry of a temporary restraining order, and upon expiration of the temporary restraining order, a preliminary injunction against Defendant Jun Zhu ("Defendant") doing business as the domain names ("Subject Domain Names") identified in Schedule A, attached hereto. Plaintiff also moves for entry of an order authorizing service of the Summons and Complaint, and all other papers filed in this matter upon Defendant via email and publication pursuant to Federal Rule of Civil Procedure 4(f)(3). After careful consideration and for the reasons set forth below, the Court grants Plaintiff's Application and sets a hearing on Plaintiff's motion for a preliminary injunction.

I.     **Temporary Restraining Order**

The standard for issuing a temporary restraining order is the same as that applied when issuing a preliminary injunction. *Morgan Stanley BW, Inc. v. Frisby*, 163 F. Supp.2d 1371, 1374 (N.D. Ga. 2001). When considering whether to enter a temporary restraining order or a preliminary injunction the moving party must demonstrate "(1) a substantial likelihood of success on the merits; (2) that irreparable injury will be suffered unless the injunction [or restraining order] issues; (3) the threatened injury to the movant outweighs whatever damage the proposed injunction [or restraining order] may cause the opposing party; and (4) if issued, the injunction [or restraining order] would not be adverse to the public interest. *Four Seasons Hotels & Resorts v. Consorcio Barr*, 320 F.3d 1205, 1210 (11th Cir.2003). The declarations Plaintiff submitted in support of its Application support all of these findings.

First, Plaintiff has a substantial likelihood of success on the merits. Plaintiff has a very strong probability of proving at trial that consumers are likely to be confused by Defendant's advertisement, promotion, sale, offer for sale, and/or distribution of handbags, wallets, shoes, boots, sunglasses, watches, and jewelry, bearing counterfeits, reproductions, and/or colorable imitations of the Chanel Marks, and that the products Defendant is selling are copies of Plaintiff's products that bear copies of the Chanel marks on handbags, wallets, shoes, boots, sunglasses, watches, and jewelry.

Plaintiff has also demonstrated that it is likely to suffer immediate and irreparable injury if a temporary restraining order is not granted. Specifically, it is clear from Plaintiff's Verified Complaint and the declarations filed on the record that Defendant is operating internet businesses which advertise, offer for sale, and sell at least handbags, wallets, shoes, boots, sunglasses,

-2-

watches, and jewelry, bearing counterfeit and infringing trademarks in violation of Plaintiff's rights. There is also good cause to believe that more counterfeit and infringing handbags, wallets shoes, boots, sunglasses, watches, and jewelry bearing Plaintiff's trademarks will appear in the marketplace, that consumers may be misled, confused, and disappointed by the quality of these products, and that Plaintiff may suffer loss of sales for its genuine products. Finally, there is also good cause to believe that if Plaintiff proceeds on notice to Defendant, Defendant can easily and quickly transfer the registrations for many of the Subject Domain Names, or modify registration data and content, change hosts, redirect traffic to other websites, and secret assets, thereby thwarting Plaintiff's ability to obtain meaningful relief.

In addition, the balance of potential harm to Defendant in restraining his trade in counterfeit and infringing branded goods if a temporary restraining order is issued is far outweighed by the potential harm to Plaintiff, its reputation and goodwill as a manufacturer of quality handbags, wallets, shoes, boots, sunglasses, watches, and jewelry, if such relief is not issued.

Finally, the public interest favors issuance of the temporary restraining order in order to protect Plaintiff's trademark interests and protect the public from being defrauded by the palming off of counterfeit goods as genuine goods of the Plaintiff. Thus, the Court grants Plaintiff's motion for a temporary restraining order.

## II.    Service of Process

The Court also finds that it is appropriate in this action to allow for service of process through alternative means. Federal Rule of Civil Procedure 4(f)(3) provides that when serving an individual in a foreign country said individual may be served by any means not prohibited by

-3-

international agreement. Here, Plaintiff wants to serve Defendant by e-mail and by publication of the Complaint and Summons on its publication website. Such methods are not prohibited by international agreement as the Defendant's address is unknown. In addition, Plaintiff has offered evidence that serving Defendant by email and by posting a copy of the Summons and Complaint on its publication website does not violate the law of the People's Republic of China. *See* (D.E. No. 9, Gaffigan Decl. ¶10 and Exh. 7). Given the nature of this case and the nature of Defendant's business, such methods are reasonably calculated to apprise Defendant of the pendency of this action and to afford Defendant the opportunity to present objections. Therefore, it is hereby:

**ORDERED AND ADJUDGED** that

1.    Plaintiff's Ex Parte Application for: (A) Entry of Temporary Restraining Order with Asset Freeze; (B) Preliminary Injunction; (C) Order Authorizing Alternate Service of Process on Defendant; and (D) Order Temporarily Sealing the Court File (D.E. No. 4) is **GRANTED in part.**

2.    Pursuant to Federal Rule of Civil Procedure 65(c), Plaintiff shall immediately post a bond in the amount of Ten Thousand Dollars and Zero Cents ($10,000.00). Plaintiff shall post the bond prior to requesting the Registry to transfer control of the Subject Domain Names, as discussed below.

3.    A Temporary Restraining Order is hereby entered against Defendant Jun Zhu as follows:

        a.    Defendant, his officers, directors, employees, agents, subsidiaries, distributors, and all persons in active concert or participation with

-4-

Defendant having notice of this Order are hereby temporarily restrained:

    i.    From manufacturing, importing, advertising, promoting, offering to sell, selling, distributing, or transferring any products bearing the Chanel trademarks identified in paragraph 10 of the Complaint in this matter (D.E. No. 1 at 4-5) (the "Chanel Marks"), or any confusingly similar trademarks, other than those actually manufactured or distributed by Plaintiff; and

    ii.    From secreting, concealing, destroying, selling off, transferring, or otherwise disposing of: (1) any products not manufactured or distributed by Plaintiff, bearing the Chanel Marks, or any confusingly similar trademarks; or (2) any evidence relating to the manufacture, importation, sale, offer for sale, distribution, or transfer of any products bearing the Chanel Marks, or any confusingly similar trademarks.

b.    Defendant, his officers, directors, employees, agents, subsidiaries, distributors, and all persons in active concert or participation with Defendant having notice of this Order shall immediately discontinue the use of the Chanel Marks or any confusingly similar trademarks, on or in connection with all Internet websites owned and operated, or controlled by them including the Internet websites operating under the Subject Domain Names;

c.    Defendant, his officers, directors, employees, agents, subsidiaries,

distributors, and all persons in active concert or participation with Defendant having notice of this Order shall immediately discontinue the use of the Chanel Marks, or any confusingly similar trademarks within domain name extensions, metatags or other markers within website source code, from use on any webpage (including as the title of any web page), any advertising links to other websites, from search engines' databases or cache memory, and any other form of use of such terms which is visible to a computer user or serves to direct computer searches to websites registered by, owned, or operated by Defendant, including the Internet websites operating under the Subject Domain Names.

d.    Defendant shall not transfer ownership of the Subject Domain Names during the pendency of this Action, or until further Order of the Court;

e.    VeriSign Global Registry, the top-level domain (TLD) Registry for the Subject Domain Names, within five (5) days of receipt of this Temporary Restraining Order shall change the registrar of record for the Subject Domain Names to a holding account with the United States based Registrar GoDaddy.com, Inc. Upon transfer of the Subject Domain Names into the holding account, GoDaddy.com, Inc. will hold the Subject Domain Names in trust for the Court during the pendency of the action. Additionally, GoDaddy.com, Inc. shall immediately update the Domain Name System ("DNS") data it maintains for the Subject Domain Names, which links the domain names to the IP addresses where their associated

-6-

websites are hosted to NS1.MEDIATEMPLE.NET and
NS2.MEDIATEMPLE.NET, which will cause the domain names to
resolve to the website where a copy of the Complaint, Summons, this
Order, and other documents on file in this action are displayed.
Alternatively, GoDaddy.com, Inc. may institute a domain name forwarding
which will automatically redirect any visitor to the Subject Domain Names
to the Following Uniform Resource Locator ("URL")
http://servingnotice.com/zhu/index.html whereon a copy of the Complaint,
Summons, this Order and other documents on file in this action are
displayed. After GoDaddy.com, Inc. has effected this change, the Subject
Domain Names shall be placed on Lock status, preventing the
modification or deletion of the domains by the registrant or Defendant;

f.     Plaintiff may enter the Subject Domain Names into Google's Webmaster
Tools and cancel any redirection of the domains that have been entered
there by Defendant which redirect traffic to the counterfeit operations to a
new domain name and thereby evade the provisions of this Order;

g.     Upon receipt of notice of this Order, PayPal, Inc. and its affiliates shall
immediately freeze all PayPal accounts related to the PayPal account I.D.s
"zhuyi005@gmail.com" and "luckyblack8@gmail.com" any other related
accounts of the same customers and shall further within five (5) days of
receiving this Order, provide Plaintiff's counsel with all data which
identifies the bank, credit or debit account number and financial institution

-7-

tied to each of the PayPal accounts frozen as well as an accounting of the
funds in the frozen accounts. Such freezing of the accounts and the
disclosure of the related financial institution account information shall be
made without notice to the account owners or the financial institutions
until further order of this Court. PayPal, Inc. shall receive and maintain
this Order and its contents as confidential until further order of this Court

h.    Upon identification of any financial institution accounts tied to the frozen
PayPal accounts, those financial institution accounts and any other
accounts in the same name or owned or controlled by the same customer
shall also be immediately frozen by the respective financial institutions
upon receipt of notice of this Order. Within five (5) days of receiving
notice of this Order, any financial institution subject to this Order shall
provide Plaintiff's counsel with all data which identifies the owner of the
financial institution accounts frozen as well as an accounting of the funds
in the frozen accounts. Such freezing of the accounts and the disclosure of
the related financial institution account information shall be made without
notice to the account owners or operators until further order of this Court.
Any financial institution subject to this Order shall receive and maintain
this Order and its contents as confidential until further order of this Court.

i.    Defendant shall preserve copies of all his computer files relating to the use
of any of the Subject Domain Names and shall take all steps necessary to
retrieve computer files relating to the use of the Subject Domain Names

-8-

and that may have been deleted before the entry of this Order.

4.    This Temporary Restraining Order shall remain in full force and effect until 14 days from the date of this order. The Temporary Restraining Order may be extended upon the filing of a motion by the Plaintiff in which the Plaintiff demonstrates that there is good cause for such an extension or that the parties have agreed to the extension.

5.    The parties shall take notice that a hearing shall take place on Plaintiff's motion for a preliminary injunction before the undersigned, United States District Judge Jose E. Martinez, at the United States Courthouse, 400 N. Miami Ave., Miami, Florida 33128 on Friday, January 28, 2011 at 2:00 p.m. This hearing shall not exceed thirty (30) minutes. The parties shall confer prior to the hearing to determine how to split the allotted time. If the parties are unable to agree on how to split the allotted time, the Court will decide how to split the allotted time. Defendant may file a motion requesting an earlier hearing on the terms of this temporary restraining order in accordance with the terms of Federal Rule of Civil Procedure 65.

6.    Plaintiff shall serve the Summons, Complaint, all documents filed thus far in this case, including this Order, and any subsequent filings in this case, including discovery, upon Defendant via email to the following email addresses sales@g-checkout.com, huang_king@yahoo.com, manvb7280@yahoo.com, service@colortrends.com, siyueshiqi@gmail.com, siyueshiqi@vip.qq.com, skyreplica@yahoo.com, chenhaoxiu6644@yahoo.com.cn, linyunyu21676@yahoo.com.cn, lituixu11607@yahoo.com.cn, and replicasky@yahoo.com. In addition, Defendant shall post a copy of the Complaint, Summons, Ex Parte Application, and this Order on the website located at http://servingnotice.com/zhu/index.html, upon transfer of the Subject Domain Names into the

holding account with GoDaddy.com, Inc.

     7.    This case shall remain **SEALED** until the Subject Domain Names are transferred to the Court's control as ordered herein and the PayPal and financial institution accounts subject to this Order are frozen. At that time, it is Plaintiff's responsibility to immediately file a motion to unseal this case.

     DONE AND ORDERED in Chambers at Miami, Florida, this _18_ day of January, 2011.

                                    JOSE E. MARTINEZ
                                      UNITED STATES DISTRICT JUDGE

Copies provided to:
Magistrate Judge Brown
All Counsel of Record

-10-

## SCHEDULE "A"
## SUBJECT DOMAIN NAMES

1. chaneleveryday.com
2. colorstrends.com
3. f2bag.com
4. g-checkout.com
5. jewelryes.com
6. king-lv.com
7. luxusbrand.com
8. pb256.com
9. pb666.com
10. phbag.com
11. pursuebrand.com
12. replica-sky.com
13. searchreplica.com
14. usdiscountshoes.com
15. vfbag.com

Composite Exhibit G

# WESTERN UNION

*moving money for better*

## State Licensing

- About Us
- Corporate Citizenship
- News
- Investor Relations
  - Financials
  - Stock Information
  - Corporate Governance
    - Leadership
    - Corporate Governance and Public Po icy Committee Charter
    - Audit Committee Charter
    - Compensation and Benefits Committee Charter
    - Pre-Set Trading Plans by Directors and Executive Officers
    - **State Licensing**
  - Fundamentals
  - Events & Presentations
- Career Center

----------

investor relations
Email us

| Name of Regulating Entity | License Type |
|---|---|
| Alabama Securities Commission | Sale of Checks |
| State of Alaska / DCCED Division of Banking and Securities | Money Transmitter |
| Arizona Department of Financial Institutions | Money Transmitter |
| Arkansas Securities Department | Money Transmitter |
| California Department of Financial Institutions (2) | Seller of Payment Instrument & Transmission of Money Abroad |
| Colorado Division of Banking | Money Transmitter |
| Connecticut Department of Banking | Money Transmitter |
| Cuban Assets Control Regulations Department of the Treasury | Money Transmitter |
| Delaware Office of State Bank Commissioner | Sale of Checks and Transmission of Money |
| District of Columbia Department of Insurance, Securities and Banking Banking Bureau | Money Transmitter |
| Florida Office of Financial Regulation | Funds Transmitter, Payment Instrument Issuer |
| Georgia Department of Banking and Finance | Check Seller |
| Guam Department of Revenue and Taxation | Foreign Exchange Money Transmitter |
| Hawaii Department of Commerce and Consumer Affairs Division of Financial Institutions | Money Transmitter |
| Idaho Department of Finance | Money Transmitter |
| Illinois Department of Financial and Professional Regulation Division of Financial Institutions | Transmitters of Money |
| Indiana The Department of Financial Institutions | Money Transmitter |
| Iowa Division of Banking | Money Services |
| Kansas Office of the State Bank Commissioner | Money Transmitter |
| Kentucky Office of Financial Institutions | Money Transmitter |
| Louisiana Commissioner of Financial Institutions | Sale of Checks, Money Transmitter |
| Maine Department of Professional and Financial Regulation Bureau of Consumer Credit Protection | Money Transmitter |
| Maryland Department of Labor, Licensing & Regulation Commissioner of Financial Regulation | Money Transmitter |
| Massachusetts Division of Banks and Loan Agencies | Check Seller & Foreign Transmitter Agency |
| Michigan Department of Labor & Economic Growth Office of Financial & Insurance Services | Money Transmitter |
| Minnesota Department of Commerce | Money Transmitter |
| Mississippi Department of Banking & Consumer Finance | Sale of Checks |
| Missouri Division of Finance | Sale of Checks |
| Nebraska Department of Banking & Finance | Sale of Checks and Funds Transmission |
| Nevada Department of Business & Industry Financial Institutions Division | Money Transmitter |
| New Hampshire Banking Department | Money Transmitter |
| New Jersey Department of Banking & Insurance Licensing Services Bureau- Banking | Money Transmitter |
| New Mexico Regulation & Licensing Department Financial Institutions Division | Negotiable Checks, Drafts and Money Orders |
| New York Banking Department | Money Transmission |
| North Carolina Commissioner of Banks | Money Transmission |
| North Dakota Department of Financial Institutions | Money Transmission |
| Ohio Division of Financial Institutions | Money Transmission |
| Oklahoma Banking Department (2) Office of State Bank Commissioner | Sale of Checks and Money Transmitter |
| Oregon Department of Consumer & Business Services Division of Finance & Corporate Securities | Money Transmitter |
| Pennsylvania Department of Banking | Money Transmitter |
| Puerto Rico Office of Commissioner of Financial Institutions | Monetary Transfers |
| Rhode Island Department of Business Regulation (2) Division of Banking | Sale of Checks and Electronic Money Transfers |
| South Dakota Revenue & Regulation Division of Banking | Money Transmitter |
| Tennessee Department of Financial Institutions | Money Transmitter |
| Texas Department of Banking | Money Transmitter |
| U.S Virgin Islands Office of the Lieutenant Governor Division of Banking and Insurance | Money Transmitter |
| Utah Department of Financial Institutions | Third Party Payments |
| Vermont Department of Banking, Insurance, Securities & Health Care Administration | Money Services |
| Virginia State Corporation Commission Bureau of Financial Institutions | Money Transmission and Money Orders |
| Washington Department of Financial Institutions | Money Transmission (includes currency exchange) |

Printable Version

E-mail This Page

### stock information

| Data | Value |
|---|---|
| | NYSE (US Dollar) |
| WU (Common Stock) | $17.52 - 0.34 |
| August 05, 2011 | 12:11 p.m ET |

Powered By **EDGAR Online**

### investor tools

**RSS Feeds**

**E-mail Alerts**

**Financial Tear Sheet**

| West Virginia Division of Banking | Money Transmission |
| Wisconsin Department of Financial Institutions | Seller of Checks |
| Wyoming Department of Audit Division of Banking | Money Transmitter |

⊖ **Cautionary information regarding forward-looking statements.**

Copyright © 2001-2010 The Western Union Company  All Rights Reserved
Privacy Terms of Use Site Map



western union

# Composite Exhibit H



## THE LICENSEE IDENTIFIED BELOW IS AUTHORIZED TO CONDUCT BUSINESS AS INDICATED BY THE LICENSE TYPE.

**LICENSE TYPE:**          Money Transmitters Part II

**LICENSE NAME:**          PAYPAL, INC.
**DBA NAME:**

**ORIGINAL DATE OF LICENSE:**          9/10/2002
**LICENSE NUMBER:**          FT20800093
**LICENSE EXPIRATION DATE:**          4/30/2012

**LICENSE MAIN ADDRESS:**
**STREET:**          2211 N FIRST ST

**CITY:**          SAN JOSE
**STATE:**          CA
**ZIP CODE:**          95131



PayPal State Licenses   PayPal

| Search | | Submit Query |

## Welcome to the Press Center
Get the latest on PayPal

- Press Center Home
- About PayPal
  - Licenses
  - Leadership
  - History
  - Awards
- Newsroom
- Multimedia Library
- Connect With Us
- Media Contacts

## PayPal State Licenses

PayPal, Inc. is licensed in the following US jurisdictions:

| Jurisdiction | Regulatory Agency | Statute |
|---|---|---|
| Alabama | Alabama Securities Commission | Sale of Checks Act |
| Alaska | Alaska Department of Commerce, Community, and Economic Development | Alaska Money Services Act |
| Arizona | Arizona State Banking Department | Transmitters of Money Act |
| Arkansas | Arkansas Securities Department | Uniform Money Services Act |
| California | California Department of Financial Institutions | Transmission of Money Abroad Law |
| Colorado | Colorado State Banking Commissioner | Money Order Act |
| Connecticut | Connecticut Department of Banking | Money Order and Travelers Check Licensees Act |
| Delaware | Delaware Office of the State Bank Commissioner | The Sale of Checks Act |
| District of Columbia | District of Columbia Department of Consumer and Regulatory Affairs | Money Transmitter Law |
| Florida | Florida Office of the Controller | Money Transmitters Code |
| Hawaii | Hawaii Division of Financial Institutions | Money Transmitters Act |
| Idaho | Idaho Department of Finance | Money Transmitters Act |
| Illinois | Illinois Department of Financial Institutions | Transmitters of Money Act |
| Iowa | Iowa Division of Banking | Money Services Act |
| Kansas | Kansas Division of Banking | Money Transmitters Act |
| Kentucky | Office of Financial Institutions | Kentucky Money Transmitters Act of 2006 |
| Louisiana | Louisiana Office of Financial Institutions | Sale of Checks and Money Transmission Act |
| Maine | Maine Office of Consumer and Credit Regulation | Money Transmitters Act |
| Maryland | Maryland State Bank Commissioner | Maryland Money Transmitters Act |
| Massachusetts | Commonwealth of Massachusetts  Division of Banks and Loan Agencies | Foreign Transmittal Agency |
| Michigan | Michigan Office of Financial and Insurance Regulation | Money Transmission Services Act |
| Minnesota | Minnesota Department of Commerce | Money Transmitters Act |
| Mississippi | Department of Banking and Consumer Finance | Sale of Checks Act |
| Missouri | Missouri Division of Finance | Sale of Checks Law |
| Montana | Department of Administration | Escrow Business License |
| Nebraska | Nebraska Department of Banking and Finance | Sale of Checks Act |
| New Hampshire | New Hampshire Banking Department | Money Transmission Act |
| New Jersey | New Jersey Department of Banking and Insurance | Money Transmitters Act |

PayPal State Licenses    PayPal

| North Carolina | North Carolina Banking Commission | Money Transmitters Act |
|---|---|---|
| North Dakota | North Dakota Department of Financial Institutions | Money Transmitters Act |
| Ohio | Ohio Department of Commerce | Transmitters of Money Law |
| Oklahoma | Oklahoma Banking Department | Oklahoma Financial Transactions Reporting Act |
| Oregon | Oregon Department of Insurance and Finance | Money Transmitters Act |
| Pennsylvania | Pennsylvania Department of Banking | Licensing Business of Transmitting Money or Credit Act |
| Puerto Rico | Puerto Rico Bureau of Financial Institutions | Laws to Regulate the Business of Money Transfers |
| South Dakota | South Dakota Division of Banking | Money Order Business |
| Tennessee | Department of Financial Institutions | Tennessee Money Transmitter Act of 1994 |
| **Texas | Texas Department of Banking | Money Services Business Statute |
| Utah | Utah Department of Financial Institutions | Check Cashing Registration Act |
| Vermont | Vermont Department of Banking, Insurance, Securities and Health Care Administration | Money Services Act |
| Virginia | Virginia Bureau of Financial Institutions | Money Order Sales and Money Transmission Services |
| Washington | Washington Department of Financial Institutions | Uniform Money Services Act |
| West Virginia | West Virginia Division of Banking | Issuance and Sale of Checks, Drafts and Money Orders Act |
| Wyoming | Wyoming Department of Audit   Division of Banking | Wyoming Money Transmitter Act |

** Texas customers click here for information about filing complaints about our money transmission or currency exchange product or service.

- About Us
- Contact Us
- Fees
- Jobs
- Developers
- Merchant Services
- Worldwide
- Privacy
- Our Blog
- Labs
- Referrals
- Legal Agreements
- eBay

Copyright © 1999-2011 PayPal. All rights reserved.



**THE LICENSEE IDENTIFIED BELOW IS AUTHORIZED TO CONDUCT BUSINESS AS INDICATED BY THE LICENSE TYPE.**

| | |
|---|---|
| **LICENSE TYPE:** | Money Transmitters Part II |
| **LICENSE NAME:** | PAYPAL, INC. |
| **DBA NAME:** | |
| **ORIGINAL DATE OF LICENSE:** | 9/10/2002 |
| **LICENSE NUMBER:** | FT20800093 |
| **LICENSE EXPIRATION DATE:** | 4/30/2012 |

**LICENSE MAIN ADDRESS:**

| | |
|---|---|
| **STREET:** | 2211 N FIRST ST |
| **CITY:** | SAN JOSE |
| **STATE:** | CA |
| **ZIP CODE:** | 95131 |