UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO. 1:11-cv-23051-DLG

CHANEL, INC. and LOUIS VUITTON
MALLETIER, S.A.,

        Plaintiffs,
  v.

ZHITIAN DAI *et al.*,

        Defendants.                        /

## ORDER GRANTING TEMPORARY RESTRAINING ORDER *EX PARTE*

THIS CAUSE is before the Court on Plaintiffs' *Ex Parte* Application for Entry of Temporary Restraining Order and Preliminary Injunction and Order Restraining Transfer of Assets Tied to the Counterfeiting Operation (the "*Ex Parte* Application for TRO and Asset Restraint"). The Court has carefully reviewed the Application, the entire court file and is otherwise fully advised in the premises.

By the instant Application, Plaintiffs, Chanel, Inc. ("Chanel") and Louis Vuitton Malletier, S.A. ("Louis Vuitton") (collectively "Plaintiffs"), move *ex parte,* for entry of a temporary restraining order and order freezing the financial accounts used by Defendants Zhitian Dai ("Dai") and Does 1-10 (collectively the "Defendants") doing business as the domain names identified on Schedule "A" hereto (the "Subject Domain Names"), pursuant to 15 U.S.C. § 1116 and Fed. R. Civ. P. 65.

### I.    Factual Background

The Court bases this Order on the following facts from Plaintiffs' Complaint, *Ex Parte* Application for TRO and Asset Restraint, and supporting evidentiary submissions.

Plaintiff Chanel is a corporation duly organized under the laws of the State of New York with its principal place of business in the United States located at Nine West 57th Street, New York, New York 10019.  (Complaint ¶ 2.)  Plaintiff Louis Vuitton is a foreign business entity organized under the laws of the Republic of France with its principal place of business in Paris, France.  (*Id.* at ¶ 3.)

Plaintiffs are engaged in the manufacture, promotion, distribution, and sale in interstate commerce, including within this Judicial District, of high quality products under multiple federally registered trademarks.  (Declaration of Adrienne Hahn Sisbarro in Support of Plaintiffs' *Ex Parte* Application for Entry of Temporary Restraining Order and Preliminary Injunction and Order Restraining Transfer of Assets Tied to the Counterfeiting Operation ["Hahn Decl."] ¶¶ 4-5; Declaration of Nikolay Livadkin in Support of Plaintiffs' *Ex Parte* Application for Entry of Temporary Restraining Order and Preliminary Injunction and Order Restraining Transfer of Assets Tied to the Counterfeiting Operation ["Livadkin Decl."] ¶¶ 4-5.)

Chanel is, and at all times relevant hereto has been, the owner of all rights in and to the following federally registered trademarks, which are valid and registered on the Principal Register of the United States Patent and Trademark Office (collectively the "Chanel Marks"):

| Trademark | Registration No. | Registration Date |
|---|---|---|
| CHANEL | 0,626,035 | May 1, 1956 |
| ⟨CC logo⟩ | 1,314,511 | January 15, 1985 |
| CHANEL | 1,347,677 | July 9, 1985 |
| CHANEL | 1,510,757 | November 1, 1988 |
| ⟨CC logo⟩ | 1,654,252 | August 20, 1991 |
| CHANEL | 1,733,051 | November 17, 1992 |

| Trademark | Registration No. | Registration Date |
|---|---|---|
| CC | 1,734,822 | November 24, 1992 |
| CC | 3,025,936 | December 13, 2005 |
| CHANEL | 3,134,695 | August 29, 2006 |

The Chanel Marks are registered in International Classes 9 and 18, and are used in connection with the manufacture and distribution of, among other things, handbags, wallets, and sunglasses. (Hahn Decl. ¶ 5; *see also* United States Trademark Registrations of the Chanel Marks at issue ["Chanel Trademark Registrations"] attached as Composite Exhibit A to the Hahn Decl.)

Louis Vuitton is, and at all times relevant hereto has been, the owner of all rights in and to the following trademarks, which are valid and registered on the Principal Register of the United States Patent and Trademark Office (collectively the "Louis Vuitton Marks"):

| Trademark | Registration No. | Registration Date |
|---|---|---|
| [monogram design] | 0,297,594 | September 20, 1932 |
| LOUIS VUITTON | 1,045,932 | August 10, 1976 |
| LV | 1,519,828 | January 10, 1989 |
| LOUIS VUITTON | 1,990,760 | August 6, 1996 |
| [flower design] | 2,177,828 | August 4, 1998 |
| [circle flower design] | 2,181,753 | August 18, 1998 |
| [monogram design] LOUIS VUITTON PARIS | 2,378,388 | August 22, 2000 |
| [pattern design] | 2,421,618 | January 16, 2001 |
| [diamond flower design] | 2,773,107 | October 14, 2003 |
| [flower design] | 3,021,231 | November 29, 2005 |

3

| | | |
|---|---|---|
| ⊕ | 3,023,930 | December 6, 2005 |
| ◈ | 3,051,235 | January 24, 2006 |

The Louis Vuitton Marks are registered in International Classes 9 and 18 and are used in connection with the manufacture and distribution of, among other things, handbags, wallets, and sunglasses. (Livadkin Decl. ¶ 5; *see also* United States Trademark Registrations of the Louis Vuitton Marks at issue ["Louis Vuitton Trademark Registrations"] attached as Composite Exhibit A to the Livadkin Decl.)

Defendants have advertised, offered for sale, and/or sold, at least, handbags, wallets, and sunglasses bearing what Plaintiffs have respectively determined to be counterfeits, reproductions, and/or colorable imitations of the Chanel Marks and Louis Vuitton Marks (collectively the "Plaintiffs' Marks"). (Hahn Decl. ¶¶ 12-14; Livadkin Decl. ¶¶ 12-14; Declaration of Eric Rosaler in Support of Plaintiffs' *Ex Parte* Application for Entry of Temporary Restraining Order and Preliminary Injunction ["Rosaler Decl."] ¶¶ 4-12 and Composite Exhibits A through G attached thereto; Declaration of Stephen M. Gaffigan in Support of Plaintiffs' *Ex Parte* Application for Entry of Temporary Restraining Order and Preliminary Injunction ["Gaffigan Decl."] ¶¶ 2-4 and Composite Exhibits A, B, and C attached thereto.) Defendants are not now, nor have they ever been, authorized or licensed to use, reproduce, or make counterfeits, reproductions, and/or colorable imitations of the Plaintiffs' Marks. (Hahn Decl. ¶ 9; Livadkin Decl. ¶ 9.)

Plaintiffs' counsel retained Eric Rosaler ("Rosaler") of AED Investigations, Inc., a licensed private investigative firm, to investigate suspected sales of counterfeit versions of Plaintiffs' respective products by Defendants. (Hahn Decl. ¶ 10; Livadkin Decl. ¶ 10; Rosaler Decl. ¶ 3.) Rosaler accessed the Internet website operating under the domain name **nicegiftsforu6.com** and placed an order for the purchase of a Chanel branded wallet to be

4

shipped directly to his address located in Aventura, Florida. (Rosaler Decl. ¶ 4 and Composite Exhibit A attached thereto.)  Rosaler finalized payment for the Chanel branded wallet via Western Union Financial Services, Inc. ("Western Union") to the payee, "ZHITIAN DAI" and was given a Money Transfer Control Number ("MTCN") of 357-057-5291. (Rosaler Decl. ¶ 6 and Comp. Ex. C thereto.)  Rosaler also accessed another one of the Internet websites operated by Defendants, **luxurybagsnow.com**, and finalized a purchase via credit card for a Louis Vuitton branded wallet, similarly to be shipped directly to his address located in Aventura, Florida. (Rosaler Decl. ¶ 8 and Comp. Ex. D thereto.)  Although Rosaler had paid via credit card, he sent an e-mail message to Defendants at sales@nicegiftsforu3.com, to request information for finalizing his payment via PayPal, Inc. ("PayPal") for the Louis Vuitton branded wallet purchased using luxurybagsnow.com.  (Id. at ¶ 9 and Comp. Ex. E thereto.)  Shortly thereafter, Defendants directly responded to his e-mail via sales@nicegiftsforu3.com, expressly instructing Rosaler to make payment through PayPal to the PayPal account "xmleading2012@hotmail.com."  (Id.)  Furthermore, Rosaler also inquired as to payment using Western Union, and was given instruction to deposit payment into the account belonging to "Zhitian Dai, Xiamen City, Fujian Province, China 361009," which is the same payee account for his purchase of the Chanel branded wallet via nicegiftsforu6.com.  (Id. at ¶ 11 and Comp. Ex. G thereto.)  Indeed, in independent correspondence received from Defendants in regards to both of his purchases, Defendants stated that they would offer Rosaler a ten percent discount if payment for the Chanel branded wallet purchased via nicegiftsforu6.com and payment for the Louis Vuitton branded wallet purchased via luxurybagsnow.com were effected using Western Union.  (Id. at ¶¶ 5, 11 and Comp. Exs. B and G thereto.)  Moreover, Defendants also admitted

to being a related business with the Internet website operating under the Subject Domain, nicegiftsforu3.com. (Id.)

Thereafter, Chanel's representative, Adrienne Hahn Sisbarro ("Hahn"), analyzed the Chanel branded wallet Rosaler purchased and received from Defendants' nicegiftsforu6.com website, including the web page listings, and determined the wallet to be a non-genuine Chanel product. (Hahn Decl. ¶ 12.) Additionally, Louis Vuitton's representative, Nikolay Livadkin ("Livadkin"), reviewed and visually inspected the web page listings of the Louis Vuitton branded wallet purchased by Rosaler from Defendants' luxurybagsnow.com website, and determined the wallet to be a non-genuine Louis Vuitton product. (Livadkin Decl. ¶ 12.) Moreover, Ms. Hahn Sisbarro and Mr. Livadkin reviewed and visually inspected the items bearing the Plaintiffs' respective Marks offered for sale by Defendants via their Internet websites operating under the Subject Domain Names and determined the products were non-genuine products. (Id. at ¶ 13.)

**II.     Conclusions of Law**

Plaintiffs' Declarations submitted in support of their *Ex Parte* Application for TRO and Asset Restraint support the following conclusions of law:

A.     Plaintiffs have a very strong probability of proving at trial that consumers are likely to be confused by Defendants' advertisement, promotion, sale, offer for sale, and/or distribution of handbags, wallets, and sunglasses respectively bearing counterfeits, reproductions, and/or colorable imitations of Plaintiffs' Marks, and that the products Defendants are selling are copies of Plaintiff's respective products that bear copies of Plaintiffs' Marks on handbags, wallets, and sunglasses.

B.     Because of the infringement of Plaintiffs' Marks, Plaintiffs are likely to suffer immediate and irreparable injury if a temporary restraining order is not granted. It clearly

appears from the following specific facts, as set forth in Plaintiffs' Complaint, *Ex Parte* Application for TRO and Asset Restraint, and accompanying declarations on file, that immediate and irreparable loss, damage, and injury will result to Plaintiffs and to consumers before Defendants can be heard in opposition unless Plaintiffs' request for *ex parte* relief is granted:

    1.    Defendants are operating Internet businesses which advertise, offer for sale, and sell, at least, handbags, wallets, and sunglasses bearing counterfeit and infringing trademarks which are exact copies of Plaintiffs' Marks in violation of Plaintiffs' respective rights;

    2.    There is good cause to believe that more counterfeit and infringing handbags, wallets, and sunglasses bearing Plaintiffs' respective trademarks will appear in the marketplace; that consumers may be misled, confused, and disappointed by the quality of these products; and that Plaintiffs may suffer loss of sales for their respective genuine products;

    3.    There is good cause to believe that if Plaintiffs proceed on notice to Defendants on this *Ex Parte* Application for TRO and Asset Restraint, Defendants can easily and quickly transfer the registrations for many of the Subject Domain Names, or modify registration data and content, change hosts, and redirect traffic to other websites, thereby thwarting Plaintiffs' ability to obtain meaningful relief;

    4.    The balance of potential harm to Defendants in restraining their trade in counterfeit and infringing branded goods if a temporary restraining order is issued is far outweighed by the potential harm to Plaintiffs, their respective reputations and goodwill as manufacturers of high quality handbags, wallets, and sunglasses, if such relief is not issued; and

5. The public interest favors issuance of the temporary restraining order in order to protect Plaintiffs' respective trademark interests and protect the public from being defrauded by the palming off of counterfeit goods as genuine goods of the Plaintiffs.

C. Under 15 U.S.C. § 1117(a), Plaintiffs may be entitled to recover, as equitable remedies, the illegal profits gained through Defendants distribution and sales of counterfeit and infringing Chanel branded goods and Louis Vuitton branded goods. *See Reebok Int'l, Ltd. v. Marnatech Enters., Inc.*, 970 F.2d 552, 559 (9th Cir. 1992) (quoting *Fuller Brush Products Co. v. Fuller Brush Co.*, 299 F.2d 772, 777 (7th Cir. 1962) ("An accounting of profits under § 1117(a) is not synonymous with an award of monetary damages: '[a]n accounting for profits . . . is an equitable remedy subject to the principles of equity.'")

D. Requesting equitable relief "invokes the district court's inherent equitable powers to order preliminary relief, including an asset freeze, in order to assure the availability of permanent relief." *Levi Strauss & Co. v. Sunrise Int'l Trading Inc.*, 51 F.3d 982, 987 (11th Cir. 1995) (citing *Federal Trade Commission v. United States Oil and Gas Corp.*, 748 F.2d 1431, 1433-34 (11th Cir. 1984)).

E. In light of the inherently deceptive nature of the counterfeiting business, and Defendants' blatant violation of the federal trademark laws, Plaintiffs have good reason to believe Defendants will hide or transfer their ill-gotten assets beyond the jurisdiction of this Court unless those assets are restrained.

Accordingly, after due consideration, it is

**ORDERED AND ADJUDGED** that Plaintiffs' *Ex Parte* Application For a Temporary Restraining Order and Order Restraining Transfer of Assets Tied to the Counterfeiting Operation is hereby **GRANTED** as follows:

(1) Defendants, their officers, directors, employees, agents, subsidiaries, distributors, and all persons in active concert or participation with them having notice of this Order are hereby temporarily restrained:

    a. From manufacturing, importing, advertising, promoting, offering to sell, selling, distributing, or transferring any products bearing the Chanel Marks and/or the Louis Vuitton Marks, or any confusingly similar trademarks, other than those actually manufactured or distributed by Plaintiffs; and

    b. From secreting, concealing, destroying, selling off, transferring, or otherwise disposing of: (i) any products, not manufactured or distributed by Plaintiffs, bearing the Chanel Marks and/or the Louis Vuitton Marks, or any confusingly similar trademarks; or (ii) any evidence relating to the manufacture, importation, sale, offer for sale, distribution, or transfer of any products bearing the Chanel Marks and/or the Louis Vuitton Marks, or any confusingly similar trademarks.

(2) Defendants, their officers, directors, employees, agents, subsidiaries, distributors, and all persons in active concert or participation with them having notice of this Order shall immediately discontinue the use of the Chanel Marks and/or the Louis Vuitton Marks or any confusingly similar trademarks, on or in connection with all Internet websites owned and operated, or controlled by them including the Internet websites operating under the Subject Domain Names;

(3) Defendants, their officers, directors, employees, agents, subsidiaries, distributors, and all persons in active concert or participation with them having notice of this Order shall immediately discontinue the use of the Chanel Marks and/or the Louis Vuitton Marks, or any confusingly similar trademarks within domain name extensions, metatags or other markers within website source code, from use on any webpage (including as the title of any web page), any advertising links to other websites, from search engines' databases or cache memory, and any other form of use of such terms which is visible to a computer user or serves to direct

computer searches to websites registered by, owned, or operated by Defendants, including the Internet websites operating under the Subject Domain Names;

(4) Defendants shall not transfer ownership of the Subject Domain Names during the pendency of this Action, or until further Order of the Court;

(5) The domain name Registrars for the Subject Domain Names are directed to transfer to Plaintiffs' counsel, for deposit with this Court, domain name certificates for the Subject Domain Names;

(6) The Registrars and the top-level domain (TLD) Registries for the Subject Domain Names, within ten (10) days of receipt of this Temporary Restraining Order shall change the registrar of record for the Subject Domain Names to a holding account with the United States based Registrar, GoDaddy.com, Inc. Upon transfer of the Subject Domain Names into the holding account, GoDaddy.com, Inc. will hold the Subject Domain Names in trust for the Court during the pendency of this action. Additionally, GoDaddy.com, Inc. shall immediately update the Domain Name System ("DNS") data it maintains for the Subject Domain Names, which links the domain names to the IP addresses where their associated websites are hosted, to NS1.MEDIATEMPLE.NET and NS2.MEDIATEMPLE.NET, which will cause the domain names to resolve to the website where a copy of the Complaint, Summonses, Temporary Restraining Order, and other documents on file in this action are displayed. Alternatively, GoDaddy.com, Inc. may institute a domain name forwarding which will automatically redirect any visitor to the Subject Domain Names to the following Uniform Resource Locator ("URL") **http://servingnotice.com/ZhitianDai/index.html** whereon a copy of the Complaint, Summonses, Temporary Restraining Order, and other documents on file in this action are displayed. After GoDaddy.com, Inc. has effected this change the Subject Domain Names shall

be placed on Lock status, preventing the modification or deletion of the domains by the registrar or Defendants;

(7) Plaintiffs may enter the Subject Domain Names into Google's Webmaster Tools and cancel any redirection of the domains that have been entered there by Defendants which redirect traffic to the counterfeit operations to a new domain name and thereby evade the provisions of this Order;

(8) Defendants shall preserve copies of all their computer files relating to the use of any of the Subject Domain Names and shall take all steps necessary to retrieve computer files relating to the use of the Subject Domain Names that may have been deleted before the entry of this Order;

(9) Upon receipt of this Order, Western Union Financial Services, Inc. ("Western Union") shall divert all money transfers sent by United States consumers to Zhitian Dai of Xiamen City, Fujian Province, People's Republic of China, with the date of birth and identification number provided by the recipient of MTCN 357-057-5291, and hold such transfers until it receives further direction from the Court;[1]

(10) In the event any money transfers are diverted in accordance with Paragraph 9 of this Order, Western Union shall be permitted to inform consumers who may contact Western Union about the transfers that the transfers are being held pursuant to a Court Order in *Chanel, Inc., et al. v. Dai, et al.*, Case No. 1:11-cv-23051-DLG, entered by the United States District Court for the Southern District of Florida and that they may contact Plaintiffs' counsel for additional information;

---

[1] Western Union is licensed to do business in the State of Florida by the Florida Office of Financial Regulation and is therefore subject to personal jurisdiction in this Court. (*See* Gaffigan Decl. ¶ 11 and Exhibit G attached thereto.)

(11)   Western Union shall also, within five business days of receiving this Order, provide to Plaintiffs' counsel records of all money transfers that have been paid to Zhitian Dai of Xiamen City, Fujian Province, People's Republic of China, with the date of birth and identification number provided by the recipient of MTCN 357-057-5291, as well as records of money transfers that have been diverted in accordance with Paragraph 9 of this Order. For any transfers that have been diverted in accordance with this Order, Plaintiffs' counsel will respond to any consumer inquiries and will provide notice of the Order and the disposition of the transfers to any affected consumer. Western Union shall receive and maintain this Order and its contents as confidential as to Zhitian Dai and any other recipient associated with the MTCN 357-057-5291, until further order of this Court;

(12)   Upon receipt of notice of this Order, PayPal, Inc. ("PayPal") and its related companies and affiliates shall immediately freeze all PayPal accounts related to the PayPal account recipient "xmleading2012@hotmail.com" and any other related accounts of the same customer;[2]

(13)   PayPal shall also immediately divert to a holding account for the trust of the Court all funds currently in, or which during the pendency of this Order come in to, all PayPal accounts related to the PayPal account recipient "xmleading2012@hotmail.com" and any other related accounts of the same customer;

(14)   PayPal shall further, within five (5) days of receiving this Order, provide Plaintiff's counsel with all data which identifies the PayPal accounts frozen as well as an accounting of the funds in the frozen accounts. Such freezing of the accounts and the disclosure of the related financial institution account information shall be made without notice to the

---

[2] PayPal is licensed to do business in the State of Florida by the Florida Office of the Controller and is therefore subject to personal jurisdiction in this Court. (*See* Gaffigan Decl. ¶ 12 and Exhibit H attached thereto.)

account owners or the financial institutions until further order of this Court. PayPal shall receive and maintain this Order and its contents as confidential until further order of this Court;

(15)    This Temporary Restraining Order shall remain in effect until the date for the hearing on the Motion for Preliminary Injunction set forth below, or until such further dates as set by the Court or stipulated to by the parties;

(16)    Pursuant to 15 U.S.C. § 1116(d)(5)(D), Plaintiffs shall post a bond in the amount of Ten Thousand Dollars and Zero Cents ($10,000.00), as payment of damages to which Defendants may be entitled for a wrongful injunction or restraint. Plaintiffs shall post the bond prior to requesting the Registries to transfer control of the Subject Domain Names;

(17)    A hearing is set before this Court in the United States Courthouse located at 400 North Miami Avenue, Miami, Florida 33128-1812, Courtroom 13-4, on _____, 2011, at _____, or at such other time that this Court deems appropriate, at which time Defendants and/or any other affected persons may challenge the appropriateness of this Order and move to dissolve the same and at which time the Court will hear argument on Plaintiffs' requested preliminary injunction;

(18)    Plaintiffs shall serve a copy of the *Ex Parte* Application for TRO and Asset Restraint and this Order on Defendants by posting a copy of the *Ex Parte* Application for TRO and Asset Restraint and this Order on the website located at **http://servingnotice.com/ZhitianDai/index.html**, upon transfer of the Subject Domain Names into the holding account with GoDaddy.com, Inc., and such notice so given shall be deemed good and sufficient service thereof. Any response or opposition to Plaintiffs' Motion for Preliminary Injunction must be filed and served on Plaintiffs' counsel forty-eight (48) hours prior to the hearing set for _____, 2011, and filed with the Court, along with Proof of

Service, on _____, 2011. Plaintiffs shall file any Reply Memorandum on or before _____, 2011. The above dates may be revised upon stipulation by all parties and approval of this Court. Defendants are hereby on notice that failure to appear at the hearing may result in the imposition of a preliminary injunction against them pursuant to 15 U.S.C. § 1116(d) and Fed. R. Civ. P. 65.

DONE AND ORDERED in chambers in Miami, Florida, this \_\_ day of _____, 2011.

_____
DONALD L. GRAHAM
United States District Judge

cc: All Counsel of Record

## SCHEDULE "A"
## SUBJECT DOMAIN NAMES

1. beautifulcity.info
2. bestapparelforu.info
3. luxurybagsnow.com
4. niceapparel.info
5. nicegiftsforu.info
6. nicegiftsforu1.info
7. nicegiftsforu2.com
8. nicegiftsforu3.com
9. nicegiftsforu4.com
10. nicegiftsforu5.com
11. nicegiftsforu6.com
12. nicegiftsforutoday.info
13. shopwhatulove.info
14. uggaustraliashoes.info